**PENNSYLVANIA UNINSURED EMPLOYERS GUARANTY FUND, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (LYLE and Walt & Al's Auto & Towing Service), Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 22, 2014.

Decided May 12, 2014.

Carl J. Smith, Jr., Pittsburgh, for petitioner.

Eric P. Betzner, Washington, for respondent Russel J. Lyle.

BEFORE: SIMPSON, Judge, and COVEY, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COVEY.

Pennsylvania Uninsured Employers Guaranty Fund (the Fund) petitions this Court for review of the Workers' Compensation Appeal Board's (Board) July 23, 2013 order reversing the portion of the Workers' Compensation Judge's (WCJ) decision denying Russell J. Lyle's (Claimant) claim against the Fund as untimely. The issues for this Court's review are: (1) whether the Board erred by substituting its own factual findings; (2) whether the Board erred by holding as a matter of law that Claimant could not know Walt & Al's Auto & Towing Service (Employer) was uninsured until he received the Department of Labor & Industry's (Department) Bureau of Workers' Compensation (Bureau) notice; and, (3) whether untimely notice to the Fund should delay, rather than forever bar, Claimant's claim. We affirm.

The facts of this case are undisputed. Claimant was employed as a mechanic for Employer. On July 14, 2008,[1] Claimant suffered a compression fracture of his thoracic spine during the course and scope of his employment. As a result, Claimant sought medical treatment and was unable to perform his time-of-injury job. On September 26, 2008, Claimant filed a claim petition for his disability due to his July 14, 2008 work injury. Employer did not respond. Claimant attempted to have his medical bills paid through Progressive Insurance, Employer's automobile liability insurance provider, and then by Geico, Claimant's first party benefits automobile liability insurer, but both companies denied his claims.

By October 3, 2008 letter, the Bureau informed Claimant that Employer may not have workers' compensation insurance.[2] On October 7, 2008, Claimant mailed a Notice of Claim Against Uninsured Employer (Notice) to the Bureau. On Octo-

---

1. July 14, 2008 was Claimant's first day back at work after an approximately six-month layoff, during which time he received unemployment compensation benefits.

2. The October 3, 2008 letter was referred to at the WCJ hearings, but was not admitted into the record. However, the parties do not dispute that Claimant received such notice, that it advised Claimant that Employer may not have workers' compensation insurance, and that it informed him about his next steps.

ber 28, 2008, Claimant filed a claim petition with the Bureau seeking benefits from Employer and the Fund. The Fund filed an answer and new matter stating, *inter alia,* that the claim was barred due to Claimant's failure to comply with Section 1603(b) of the Workers' Compensation Act's (Act) [3] notice requirements.

Hearings were held before a WCJ on December 5, 2008 [4] and January 13, April 21, May 26, August 27 and December 8, 2009. On April 27, 2010, the WCJ issued a decision granting Claimant's claim petition as to Employer,[5] but denying the claim petition as to the Fund because the Claimant did not give timely notice of his claim to the Fund. Claimant appealed to the Board which affirmed the WCJ's grant of Claimant's claim petition, but held that Claimant's notice to the Fund was timely and reversed that portion of the WCJ's decision.[6] The Fund appealed to this Court.[7]

The Fund first argues that the Board erred by substituting its factual findings for those made by the WCJ on the issue of whether Claimant timely notified the Fund of his claim. We disagree. Effective Jan-

uary 2007, Section 1602 of the Act, 77 P.S. § 2702, established the Fund for purposes of paying workers' compensation benefits and associated costs to claimants whose employers failed to be insured or self-insured for workers' compensation liability at the time their injuries occurred. In order for claimants to avail themselves of the Fund, Section 1603(b) of the Act provides:

> An injured worker **shall notify the [F]und within 45 days after the worker *knew* that the employer was uninsured.** The [D]epartment [of Labor and Industry (Department)] shall have adequate time to monitor the claim and shall determine the obligations of the employer. No compensation shall be paid from the [F]und until notice is given and the [D]epartment determines that the employer failed to voluntarily accept and pay the claim or subsequently defaulted on payments of compensation. No compensation shall be due until notice is given.

77 P.S. § 2703(b) (emphasis added). Section 123.802 of the Bureau's Regulations likewise states:

---

**3.** Act of June 2, 1915, P.L. 736, *as amended,* added by Section 7 of the Act of November 9, 2006, P.L. 1362, 77 P.S. § 2703(b).

**4.** Claimant explained at the December 5, 2008 WCJ hearing that he had retained counsel. He previously acted pro se.

**5.** The WCJ's decision specified:
Employer shall pay to [C]laimant total disability benefits from the date of injury onward, plus statutory interest. Employer shall take a credit for unemployment compensation benefits received by [C]laimant. Employer shall deduct twenty (20%) percent of benefits and pay this amount directly to [C]laimant's attorneys.... Employer shall pay to [C]laimant's attorneys the additional sum of $725.00 as reimbursement for litigation costs. Employer shall pay medical expenses for treatment of [C]laimant's T12 compression fracture.

Reproduced Record at 24a–25a.

**6.** The Board held, therefore, that "if it is legally demonstrated that [Employer] has or were to default on payments to the Claimant, liability under the Act shall only then transfer to the [Fund] by operation of law." Reproduced Record at 39a.

**7.** "This Court's scope and standard of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed." *World Kitchen, Inc. v. Workers' Comp. Appeal Bd. (Rideout),* 981 A.2d 342, 346 n. 5 (Pa.Cmwlth.2009).

The Pennsylvania Association for Justice (PAJ) filed an *amicus curiae* brief in support of Employer's position.

(a) ... [A]n injured worker who seeks benefits from the Uninsured Employer Guaranty Fund (Fund) **shall notify the Fund of a claim within 45 days from the date upon which the injured worker *knew* that the employer was uninsured.**

(b) Compensation will not be paid from the Fund until notice is given.

(c) Notice to the Fund shall consist of completing and mailing the form designated as 'Notice of Claim Against Uninsured Employer' (Notice) to the Department of Labor and Industry (Department) at the address listed on the form. The Department may reject any incomplete Notice.

(d) The Notice will be deemed filed as of the date of the Notice's deposit in the United States Mail, as evidenced by a United States Postal Service postmark, properly addressed, with postage or charges prepaid. If a United States Postal Service Postmark is not present, the date of the Department's actual receipt of the Notice is the filing date.

34 Pa.Code § 123.802 (emphasis added). There is no dispute in this case that Claimant filed his Notice with the Fund within 45 days of receiving the Bureau's October 3, 2008 letter stating that Employer may not be insured. The issue, therefore, is whether that letter was the first point at which Claimant "**knew** that the [E]mployer was uninsured." 77 P.S. § 2703; 34 Pa.Code § 123.802 (emphasis added).

At the January 13, 2009 WCJ hearing, when Claimant was asked when he first learned that Employer did not have insurance coverage, Claimant responded, "I think it was about a month later maybe," that he was told by Employer's principal, Eric Kightlinger (Kightlinger).[8] Repro-

duced Record (R.R.) at 65a; *see also* R.R. at 69a–70a, 113a–114a, 116a–117a. Claimant testified that he filed his claim against the Fund "probably maybe a couple of weeks after that maybe, something like that." R.R. at 65a. He stated that he did not know Employer was uninsured when he first saw Gerard J. Werries, M.D. (Dr. Werries) at Tri–State Orthopaedics & Sports Medicine, Inc. on July 24, 2008.

At the May 26, 2009 WCJ hearing, Claimant testified that he began treating with Dr. Werries approximately 1½ to 2 weeks after his injury occurred, and that he did not find out about Employer's lack of insurance "until weeks later." R.R. at 117a–118a. Claimant also recounted that his conversation occurred when he called Kightlinger at the shop about insurance after he began receiving hospital bills, and Kightlinger told him "he didn't have [any] Workmen's Comp[ensation] because it lapsed." R.R. at 118a.

During his September 25, 2009 deposition, Kightlinger testified that within "a few days or a week or so" of Claimant's work injury, the hospital called and asked him for Employer's workers' compensation claim number. R.R. at 230–231a. Because Kightlinger was not aware that the insurance had lapsed, he gave the hospital his insurance information and then called the State Worker's Insurance Fund to turn in the claim. Kightlinger answered all of the questions and, at the end of the process, was told "that there was no coverage; there was a lapse in the coverage." R.R. at 231a–232a. Kightlinger maintained that he told Claimant shortly after speaking to the insurance company, "within that two-week period" following the accident. R.R. at 232a. Kightlinger ex-

---

**8.** Claimant did not specifically recall the circumstances of the conversation, but said that since Eric is his grandson's father, it could have just occurred when he picked his grandson up for something.

plained that "probably within a matter of three weeks or so" of Claimant's work injury, Kightlinger asked his fiance, Claimant's daughter, to call Progressive, Employer's auto and truck insurance provider, to see if it would accept Claimant's claim. R.R. at 232a. He declared that he could not be 100% certain when Claimant knew there was no workers' compensation insurance, "but it was within a few weeks that we all knew that there wasn't any coverage." R.R. at 233a.

During his September 25, 2009 deposition, Claimant testified that approximately two or three weeks after his work injury, his daughter called and told him that Employer was trying to figure out who is going to pay his medical bills and she gave him a Progressive claim number to use for his treatments. Claimant maintained, however, that it was not until 1 to 1½ months after his injury that Kightlinger told him that Employer had no workers' compensation insurance. Claimant explained that he received a July 30, 2008 letter from Progressive informing him that he was eligible for first party benefits under his Geico automobile policy. *See* R.R. at 272a. However, when Claimant sought coverage from Geico for his work-related medical expenses, Geico denied them on the basis that they should be submitted to Employer's workers' compensation insurer. Claimant recalled receiving his first hospital bill about "two weeks later or a week later—somethin' like that." R.R. at 252a. He stated that he contacted Kightlinger, and then within two days sent the bills to Kightlinger by certified mail, but Kightlinger did not sign for them.

Claimant reported that although approximately two months after his injury Kightlinger told Claimant "he'd try to take care of [the medical bills] somehow," he never did. R.R. at 253a–254a. Claimant also testified that he tried to send the hospital bill to Kightlinger 3 or 4 weeks following the accident, after which Kightlinger told him to use the Progressive claim number. Claimant acknowledged that Progressive denied his claims within 2 weeks after his injury, and then he contacted Geico. Claimant agreed that he knew by August 10, 2009 that Geico was not going to pay his bills either. Kightlinger simply kept telling him he was "takin' care of it." R.R. at 258a. When asked if Kightlinger told him he was having a problem with his workers' compensation insurance, Claimant responded: "No, not really." R.R. at 258a. Claimant contended that Kightlinger did not tell him why he should submit the bills to Progressive and then to Geico, and Claimant did not attempt to find out why. Claimant stated: "I just was goin' through the steps." R.R. at 259a. Claimant's deposition reflects the following exchange:

Q (on cross) You ultimately received a letter from the [Department], which is part of the [WCJ]'s record, dated October 3, 2008, that said that [Employer] may not have Workers' Comp[ensation] insurance. Do you remember getting that?

A Yes, that's when I knew.

Q Did you know before that?

A No, not at all.

. . . .

Q (on re-direct) So, . . . [t]he first time that you had any knowledge that [Employer] had no Workers' Comp[ensation] insurance is when you received the letter from the [Bureau]?

A Yeah, in writing, black and white. You know what I mean. What he said and what I read—you know.

Q Your testimony is that no one from [Employer] told you that there was no[t any] Workers' Comp[ensation] prior to when you received that letter?

A No.

Q  And it didn't occur to you, between July 14, 2008 and the beginning of October of 2008, to make further inquiry about whether there was Workers' Comp[ensation] insurance?

A  No. Like I said, he was doin[g] the paper work, you know.

. . . .

Q  (on re-cross) At the time you filed [the original claim against Employer], did you know that there was no Workers' Comp[ensation] coverage?

A  No, I didn't know that at the time. I was just doin[g] this in case he didn't have it.  You know what I mean, coverin[g] my back.

R.R. at 266a–269a.  Claimant acknowledged that approximately 4 days after he received the Department's letter he notified the Fund of his intention to file a claim.

■  We recognize that "[t]he WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks),* 16 A.3d 1225, 1229 n. 8 (Pa.Cmwlth.2011). Accordingly, "[t]he WCJ … is free to accept or reject, in whole or in part, the testimony of any witness…." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster),* 760 A.2d 72, 76 (Pa.Cmwlth.2000).

Based upon the record evidence in the instant case, the WCJ made the following relevant findings:

19.  With respect to when he had notice that employer had no workers' compensation insurance coverage, I reject claimant's testimony as not credible. Claimant gave several different answers as to when he had such notice.  He twice said that he had notice about a month after the injury.  At another point[,] he testified that he had notice weeks later after his first visit with Dr.

Werries.  Claimant also testified that he had notice one and a half months after the work injury.  Claimant later testified that he had no idea when the conversation with Mr. Kightlinger about the employer having no insurance took place.  Claimant ultimately testified that he did not have notice about the fact that employer had no insurance until he received a letter from the [Department] dated October 3, 2008.  Given the fact that Mr. Kightlinger's fiancé is [C]laimant's daughter, that it was her idea to submit the claim to Progressive Insurance because of the lack of workers' compensation coverage, and that Progressive Insurance sent claimant a letter dated July 30, 2008[ ] indicating that [it] would not pay for his treatment, I would find it difficult to believe that [C]laimant did not have notice that [E]mployer did not [have] any workers' compensation coverage later than when he received the letter of July 30, 2008.  I therefore accept Mr. Kightlinger's testimony as credible over that of [C]laimant on this issue and I find that [C]laimant had notice that employer had no workers' compensation coverage within a few weeks after the work injury.

20.  Based on the prior finding, I find that [C]laimant did not give notice to the [Fund] within 45 days after he knew that [E]mployer had no workers' compensation insurance coverage.

R.R. at 23a.

The Board expressly acknowledged that weighing evidence and conflicting testimony is exclusively within the WCJ's province, and that "the WCJ has fulfilled his function as a fact finder" (R.R. at 35a), and "issued a reasoned decision[.]"  R.R. at 36a.  The Board however opined:

In reviewing the conflicting testimony of the Claimant and Mr. Kightlinger, and not substituting our credibility determi-

nations for those of [the WCJ], but rather looking to the legal question of whether or not the testimony of record, when viewed as a whole, clearly establishes that Claimant had knowledge on July 30, 2008, following receipt of the letter from Progressive Insurance, **we must conclude as a matter of law that he did no[t] possess the requisite knowledge as of that date.**

R.R. at 37a (emphasis added). The Board reasoned that Section 1603(b) of the Act is triggered by when a claimant "knew", rather than "should have known" which, in this case, was when Claimant received the Bureau's October 3, 2008 letter. In support of its position, the Board stated:

Claimant was unrepresented until November 12, 2008. Prior to his representation, the Claimant did what he was supposed to do, or at least what was reasonable, in that he filed a claim petition against the [E]mployer. It was following the claim petition that the Claimant was (1) officially advised that the employer may not have workers' compensation insurance—even the Commonwealth was not certain, but (2) the state advised the Claimant of his right to file a special claim against an uninsured employer and also provided the form on which to do so. The letter from the Commonwealth was dated October 3, 2008 and the Claimant promptly filed within 45 days with the LIBC–551 filed on October 7, 2008.

Only upon receipt of the October 3, 2008 letter from the Commonwealth, did the Claimant now have confirmation and knowledge that there was a high likelihood the employer was uninsured. Also, the Claimant now had some knowledge by way of the form as to what recourse was available to him.

Because the Claimant filed the LIBC–551 within 45 days of receipt of the

October 3, 2008 letter from the Bureau advising him that there was no reported insurance for the [E]mployer, we respectfully reverse the WCJ and so conclude that notice to the [Fund] under § 1603 was timely. Although the testimony and circumstances that occurred prior to the October 3, 2008 letter may have been such that [Claimant] should have known or certainly suspected, due process requires a greater clarity of the facts as the result is the dismissal of [Claimant's] claim for benefits with prejudice.

R.R. at 38a–39a.

■■■ We acknowledge that the law is clear that neither the Board nor the Court may review the evidence or reweigh the WCJ's credibility determinations. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 565 Pa. 114, 771 A.2d 1246 (2001). In addition, "Section 422(a) [of the Act, 77 P.S. § 834,] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa.Cmwlth.2006) (citation omitted). However, this Court has stated:

it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; **the critical inquiry is whether there is evidence to support the findings actually made. We review the entire record to determine if it contains evidence a reasonable mind might find sufficient to support the WCJ's findings.** If the record contains such evidence, the findings must be upheld even though the record contains conflicting evidence.

*Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa.Cmwlth.

2007) (citation and quotation marks omitted; emphasis added). Moreover, this Court has held:

> Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. In performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed before the factfinder. Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party.

*3D Trucking Co., Inc. v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa.Cmwlth. 2007) (citations omitted) (quoting *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth.2003)).

■ Here, when Claimant learned that his medical bills were unpaid, he notified Employer who repeatedly assured him, through his own daughter, that the problem was being investigated. Progressive's July 30, 2008 letter informed Claimant that he was eligible for first party benefits from Geico. Progressive's letter *does not use the words* workers' compensation insurance nor does it notify Claimant in any manner that Employer's workers' compensation insurance coverage has lapsed. Thereafter, Geico informed Claimant that his claim should be submitted to Employer's workers' compensation insurer. Moreover, it is undisputed that the Bureau's October 3, 2008 letter did not expressly state that Employer did not have valid workers' compensation insurance, but nevertheless informed Claimant of his next steps. Based upon these facts, we agree with the Board and conclude that the Board did not err in holding that the record does not contain evidence a reasonable mind might find sufficient to support the WCJ's finding and conclusion that Claimant had knowledge of Employer's uninsured status when he received Progressive's July 30, 2008 letter and, as a result, Claimant did not timely notify the Fund of his claim.

■ The Fund next argues that the Board erred by holding as a matter of law that Claimant could not know that Employer was uninsured until Claimant received the Bureau's October 3, 2008 notice. We agree. As the Fund points out, nothing in Section 1603 of the Act or the Bureau's Regulations requires the Bureau to issue a notice like the October 3, 2008 letter to Claimant. Thus, although we agree that the Bureau's October 3, 2008 letter afforded Claimant the requisite actual knowledge in this case, we do not agree that, as a matter of law, a claimant could not know that an employer is uninsured until such a letter is received. Rather, whether a claimant "knew" is a factual determination. Accordingly, the Board did err by holding as a matter of law that Claimant could not know that Employer was uninsured until Claimant received the Bureau's October 3, 2008 notice.[9]

Based upon the foregoing, the Board's order is affirmed.

## ORDER

AND NOW, this 12th day of May, 2014, the portion of the Workers' Compensation Appeal Board's July 23, 2013 order reversing the Workers' Compensation Judge's decision denying Russell J. Lyle's claim

---

9. This Court need not address Employer's and the PAJ's third issue that untimely notice to the Fund should delay rather than forever bar Claimant's claim based upon our rulings on the first and second issues.

against the Pennsylvania Uninsured Employers Guaranty Fund is affirmed.