# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Earl G. Lind,                          :
                        Petitioner     :
                                       :
            v.                         :
                                       :
Workers' Compensation Appeal           :
Board (Utilicon Corporation),          :    No. 780 C.D. 2015
                        Respondent     :    Submitted: November 13, 2015


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge[1]
           HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                            FILED: May 5, 2016


Earl G. Lind (Claimant), pro se, petitions this Court for review of the Workers' Compensation Appeal Board's (Board) March 27, 2015 order affirming the Workers' Compensation Judge's (WCJ) decision denying Claimant's claim petition (Claim Petition). The issue before the Court is whether the Board erred by upholding the WCJ's conclusion that Claimant failed to meet his burden of proving that he is entitled to workers' compensation benefits.[2] After review, we affirm.

_____

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[2] Claimant also asserts that the Board "erred in concluding that '[he] is ineligible for benefits under . . . Section 402(b) of the Pennsylvania Unemployment Compensation [(UC)] Law [(Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b) (relating to ineligibility for UC benefits for voluntarily leaving work without a necessitous and compelling reason)].'" Claimant Br. at 6; *see also* Claimant Br. at 8. Because Claimant's injury date was his last work day before Utilicon Corporation laid him off, he received UC benefits. *See* Reproduced Record at 63-64. However, in his brief, Claimant does not further expound upon his argument. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority[,] or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. Cmwlth. 2009).

Claimant was employed by Utilicon Corporation (Employer) in September 2010 for approximately 13 weeks as a foreman for a pipe-laying job. On January 7, 2011,[3] Claimant slipped on ice and fell onto his right shoulder. He reported the incident to his supervisor, who informed Claimant that since his work on that particular job was complete, he was going to be laid off that night anyway. Claimant did not work thereafter.

On January 18, 2012, Claimant filed the Claim Petition seeking total disability and medical benefits due to a right shoulder rotator cuff tear sustained in the course and scope of his employment on January 7, 2011. Employer timely denied the allegations. Hearings were held before a WCJ on February 27, 2012, October 3, 2012, January 7, 2013 and April 15, 2013. On January 23, 2014, the WCJ denied the Claim Petition after concluding that Claimant failed to prove that his ongoing right shoulder problems were related to Claimant's January 7, 2011 fall. Claimant appealed to the Board which, on March 27, 2015, affirmed the WCJ's decision. Claimant appealed to this Court.[4]

Claimant argues that he proved the elements necessary to support his Claim Petition. We disagree. "Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Washington v. Workers' Comp. Appeal Bd. (State Police)*, 11 A.3d 48, 54 n.4 (Pa. Cmwlth. 2011) (quotation marks omitted).

Moreover, it does not appear that the UC benefits were challenged, and neither the WCJ's decision nor the Board's opinion refer to Section 402(b) of the Law. Therefore, we limit our review to whether Claimant met his burden of proving his case.

[3] There are inconsistencies regarding Claimant's injury date; however, the WCJ found that the fall occurred on January 7, 2011.

[4] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

> An injured employee seeking to obtain workers' compensation benefits for a work-related injury bears the burden of proving all elements necessary to support an award. Pursuant to Section 301(c)(1) of the [Workers' Compensation] Act [(Act)[5]], 77 P.S. § 411(1), an employee's injuries are compensable if they (1) arise in the course of employment and (2) are causally related thereto.

*Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 75 n.4 (Pa. Cmwlth. 2012) (citation omitted). "[I]n cases where . . . the causal relationship between the injury and the employment is not obvious, unequivocal medical testimony is required to establish this causal relationship." *Rockwell Int'l v. Workers' Comp. Appeal Bd. (Sutton)*, 736 A.2d 742, 744 (Pa. Cmwlth. 1999). "[M]edical testimony is unequivocal if a medical expert testifies, after providing foundation for the testimony, that, in his professional opinion, he believes or thinks a fact exists." *Amandeo,* 37 A.3d at 80 (quoting *O'Neill v. Workers' Comp. Appeal Bd. (News Corp., Ltd.),* 29 A.3d 50, 58 (Pa. Cmwlth. 2011)).

Here, Claimant, in an effort to show that his disability was related to his January 7, 2011 fall, testified that he received chiropractic treatment two to three times weekly for approximately four months. He recalled being referred to Dr. Haffner in January 2012 who ordered an MRI, gave him cortisone shots in his right shoulder and conducted surgery. He also recounted visiting his family doctor, Dr. Masterson, in November 2012, and undergoing an MRI. Claimant maintained that his symptoms worsened over time despite surgical intervention, and reported that he has not worked since his fall. He explained that he still receives chiropractic treatments.

Claimant also presented the testimony of chiropractor Heather Duckett, D.C. (Dr. Duckett) and orthopedic surgeon Dean G. Sotereanos, M.D. (Dr. Sotereanos). Dr. Duckett testified that she first treated Claimant on January 10, 2011.

---

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

She clarified that although her notes reflect that Claimant reported slipping on a wet floor, she recalled him telling her that he fell on ice at work and hit his right elbow, shoulder and hip. Dr. Duckett described that Claimant had decreased range of motion in his thoracic, cervical and lumbar areas, plus tenderness and swelling in those areas as well as his sacral area. She recalled treating Claimant with spinal manipulation, electrical stimulation and traction three times per week from January 10 through January 28, 2011, twice between January 31 through February 2, 2011 and, due to his rapid improvement, only once in March 2011. Dr. Duckett testified that she placed Claimant on a 20-pound lifting restriction during January 2011; however, because Claimant had recovered from his injuries by February 2, 2011, she released him to return to work without restriction.

Dr. Duckett explained that she did not treat Claimant again until June 2011, when he complained of flare-ups after helping a friend with some roofing, but that the pain subsided after two visits. She further described that, due to a worsening of Claimant's symptoms (beyond his complaints after his initial injury), she treated him again beginning in December 2011 and continuing through October 5, 2012. She recalled that despite treatment and surgery, his complaints remained the same. She also testified that Claimant's January 2012 MRI results reflected that he had a small, frayed tear where the muscle met the bone, and moderate to advanced degenerative changes in his acromioclavicular joint, all of which were consistent with her physical findings. However, she admitted that there was no way for her to know whether the tear was due to trauma or degeneration.

Dr. Duckett diagnosed Claimant with cervical, thoracic, lumbar and sacral subluxation, and thoracic pain and degeneration. She opined within a reasonable degree of chiropractic certainty that Claimant's condition was related to his January 2011 fall at work, but admitted that the June 2011 roofing work was a contributing factor. Dr. Duckett acknowledged that although Claimant always

4

complained of right shoulder pain and she charted those complaints, her records do not include a specific right shoulder injury diagnosis.

Dr. Sotereanos testified that he first treated Claimant on October 17, 2012. He learned from Claimant that he "took a hit" at work and landed on his shoulder. Reproduced Record (R.R.) at 37. He described that, in January 2011, Claimant received chiropractic treatment, and then treated with Dr. Haffner, who performed shoulder arthroscopy and an arthroscopic claviculectomy, which afforded Claimant transient improvement before his pain returned. Dr. Sotereanos recalled that Claimant had severe right acromioclavicular joint tenderness and a positive cross-chest maneuver, and x-rays revealed acromioclavicular joint arthritis and rotator cuff tendinopathy for which Claimant underwent surgery on November 6, 2012, followed by physical therapy. Dr. Sotereanos explained that Claimant progressively improved to the point that, as of April 17, 2013, Claimant had full right shoulder range of motion, good strength and his pain was significantly better. Dr. Sotereanos stated that because Claimant was still recovering, he restricted Claimant to light-to-medium-duty work for another month or two thereafter. However, he anticipated that Claimant would go on to achieve a full recovery within two months after his surgery, and that he should be able to return to full-duty work. Dr. Sotereanos opined with a reasonable degree of medical certainty that Claimant had "pre-existing arthritic changes of the clavicle that was asymptomatic until the fall, and [then] it became symptomatic." R.R. at 35.

The law is well established that "[t]he WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). "The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000).

Based upon the evidence presented in the instant case, the WCJ found that, "on January 7, 2011, [Claimant] slipped on the ice on the job site and fell[,] landing on his right shoulder," but failed to prove that his persistent right shoulder problems and resultant disability were related to the January 7, 2011 fall. WCJ Dec. at 2. In reaching her decision, the WCJ made the following credibility determinations:

> 12. This [WCJ] does not find the testimony and opinion of Dr. Duckett credible or persuasive. She testified that [Claimant]'s complaints and physical examination findings were consistent with a right shoulder problem. Yet, she treated [Claimant] off and on for a year and never identified a shoulder injury. Dr. Duckett never referred [Claimant] to another provider for evaluation of his shoulder. All [of] her diagnoses and diagnostic codes were for spinal problems. Since this [WCJ] did not find Dr. Duckett's testimony regarding the relationship of the shoulder to the work incident, this [WCJ] does not find her opinion credible and persuasive that the other diagnoses were related to the January 7, 2011[] fall.
>
> 13. Dr. Sotereanos' opinion that [Claimant] sustained an aggravation of his pre-existing arthritic condition of his clavicle as a result of his January 7, 2011[] fall was not credible or persuasive. He did not evaluate [Claimant] until October 17, 2012 - 21 months after the fall. He did not know what the mechanism of [Claimant]'s fall was. Dr. Sotereanos had not reviewed any records regarding [Claimant]'s treatment since [his] January 7, 2011[] fall.
>
> 14. [Claimant]'s testimony, taken as a whole, is not sufficient to establish that his right shoulder problems were related to his January 7, 2011[] fall. The shoulder problems were first identified in January 2012, when the MRI was performed. Therefore, a credible and persuasive medical opinion is required to relate his shoulder problem to the January 7, 2011[] fall that occurred at work.

WCJ Dec. at 9-10.

6

Claimant's entire argument is as follows:

Dr. Duckett's . . . diagnostic codes were not represented correctly.  In other words, no coding related to the shoulder was indicated although she admits to caring or adjusting the shoulder.  This documentation was not given to [Claimant] to review but a coding used by the chiropractor's office for capturing billing and insurance payments was used. . . . This work incident/fall was entirely related to the shoulder area.  [Dr. Duckett] created deposition of which was her first to prepare. [sic]  I believe the inexperience resulted in her not presenting clear documentation and coding for insurance was mis[]represented.  In addition[,] the coding she indicates in her document[s a]re associated to back and not the adjustments she actually performed on the shoulder. In addition, Dr. Duckett mis[]stated in the fact finding detail regarding [Claimant] being sore from doing roof work. This is incorrect, a contractor performed this roof replacement not [Claimant].   [Claimant] could have performed this kind of work if he was not injured (fact finding document 9d).

The adjustments from the chiropractor resulted in no improvement to right shoulder pain.  An MRI [was] prescribed by the family doctor on 1/6/12[.]  [Claimant] was directed to see Dr. Haffner to review the MRI and ultimately he performed surgery on the shoulder on 5/14/12. Follow[-]up appointments were conducted but total recovery had not occurred.  A second doctor [saw Claimant] on 10/17/2012 (Dr. Sotereanos). This doctor determined additional surgery was necessary.  The second surgery was performed on 11/6/2012.

[Claimant] was instructed to visit a doctor (Dr[.] Weiss) directed by [Employer] for an examination on 4/10/2012. . . .  Based on the documentation and comments from Dr. Weiss[,] he indicates [Claimant] had no issues with his shoulder and his decision was based on [Claimant]'s strong hand shake which has nothing to do with his right shoulder. In addition, Dr. Weiss is not familiar with shoulder surgeries and he indicates he has less than 10% of his surgeries are related to shoulders.

Claimant Br. at 9-10. Clearly, Claimant challenges the WCJ's credibility determinations.

However, neither the Board nor the Court may reweigh the evidence or the WCJ's credibility determinations. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246 (Pa. 2001). Specifically, "Section 422(a) [of the Act, 77 P.S. § 834,] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations." *Pa. Uninsured Emp'rs Guar. Fund v. Workers' Comp. Appeal Bd. (Lyle)*, 91 A.3d 297, 303 (Pa. Cmwlth. 2014) (quoting *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.),* 893 A.2d 191, 195 (Pa. Cmwlth. 2006)). Thus, "[u]nless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal."[6] *Dorsey*, 893 A.2d at 195. Finally, this Court has held:

> 'In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder.' 'Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party.' It does not matter if there is evidence in the record supporting findings contrary to those made by the WCJ; the pertinent inquiry is whether the evidence supports the WCJ's findings.

*3D Trucking Co., Inc., v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa. Cmwlth. 2007) (quoting *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison),* 819 A.2d 164, 168 (Pa. Cmwlth. 2003) (citations omitted)).

Here, the WCJ summarized Dr. Duckett's, Dr. Sotereanos' and Claimant's testimony and adequately explained her credibility determinations.

---

[6] "Capricious disregard occurs only when the fact-finder deliberately ignores relevant, competent evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004). Capricious disregard, by definition, does not exist where, as here, the WCJ expressly considered and rejected the evidence. *Williams*.

Because this Court may not reweigh the evidence or the WCJ's credibility determinations, and must view the evidence in a light most favorable to Employer, we agree that Claimant failed to prove the elements necessary to support his Claim Petition and, thus, the WCJ properly denied it. Accordingly, the Board did not err when it affirmed the WCJ's decision.

For all of the above reasons, the Board's order is affirmed.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Earl G. Lind,                            :
                   Petitioner     :
                                :
             v.                :
                                :
Workers' Compensation Appeal     :
Board (Utilicon Corporation),      :   No. 780 C.D. 2015
                 Respondent   :

## O R D E R

AND NOW, this 5th day of May, 2016, the Workers' Compensation Appeal Board's March 27, 2015 order is affirmed.

 

_____
ANNE E. COVEY, Judge