IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia Housing Authority, :
     Petitioner :
           :
           :
   v.       :
           :
Workers' Compensation Appeal :
Board (Butt),      : No. 633 C.D. 2020
     Respondent : Submitted: February 26, 2021


BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY         FILED: April 22, 2021

   The Philadelphia Housing Authority (Employer) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) June 11, 2020 order reversing Workers' Compensation Judge (WCJ) Sandra Craig's (WCJ Craig) decision granting Employer's Petition to Terminate WC Benefits (Termination Petition). Employer presents one issue for this Court's review: whether the Board erred by concluding that the opinion of Employer's expert, Dennis P. McHugh, D.O. (Dr. McHugh), was incompetent and insufficient to support the Termination Petition. Upon review, this Court reverses.

   Shenecqua Butt (Claimant) was employed as a home inspector for Employer.[1] In February 2016, Claimant notified Employer that, while working, she

---

[1] [Claimant's] job duties require[d] her to inspect between 18 and 20 apartments per day, 8 hours a day, 5 days a week, with a [1]-hour lunch break. She ha[d] to lift every window in the house, check every electrical outlet in the unit, bend and look underneath the sinks and toilets to make sure there were no pipes leaking. She walk[ed]

developed lower back and right leg pain that extended into her foot and caused her to limp. Claimant had a long history of lumbar spondylosis and degenerative disc disease,[2] and also began treating with a rheumatologist for what was eventually diagnosed as an autoimmune connective tissue disease (i.e., Sjorgren's Disease). In February 2016, her rheumatologist prescribed physical therapy and a muscle relaxer for Claimant's pain. On March 29, 2016, the rheumatologist completed Family and Medical Leave Act (FMLA)[3] forms for Claimant to be off work for 8 weeks to undergo intensive physical therapy from March 29 to May 24, 2016, which forms Claimant mailed to Employer.[4] Claimant continued to work her full-duty job until April 5, 2016, when she again experienced a sharp pain in her low back that radiated into her right foot.

On April 8, 2016, Claimant treated at the emergency room for continued back and leg pain. The emergency room physician gave her a note for light-duty work. Claimant took the note to Employer and reported a work injury.

---

> through the unit and the property perimeter, [went] up and down stairs, ben[t], squat[ted] and lift[ed].

WCJ 8/11/2017 Dec. at 1, Reproduced Record (R.R.) at 450a.

[2] Spondylosis is a condition caused by degenerative changes affecting the spine. *See* WCJ 7/19/2019 Dec. at 6, R.R. at 37a. Degenerative disc disease is a condition that specifically affects the discs. *See id*.

> Claimant suffered past work injuries with Employer including low back injuries as a result of motor vehicle accidents on August 3, 2009 and July 24, 2012. Claimant was also out of work on a [m]edical [l]eave of [a]bsence from November 19, 2013 to December 14, 2014[,] and again May 1, 2015 through August 30, 2015.

WCJ 8/11/2017 Dec. at 4, R.R. at 453a.

[3] 29 U.S.C. §§ 2601-2654.

[4] Claimant requested the FMLA forms at her February 2016 office visit, but her rheumatologist did not complete them until March 29, 2016. Claimant requested 12 weeks off from work, but her rheumatologist would only agree to 8 weeks. Employer approved Claimant's FMLA leave on April 22, 2016, and, as will be discussed below, Claimant worked until April 26, 2016.

2

Claimant worked light-duty for Employer from April 12 to April 26, 2016. Claimant's FMLA leave was approved on April 22, 2016. Also on April 22, 2016, Employer denied Claimant's WC claim. Claimant did not return to work after April 26, 2016.

On June 3, 2016, Claimant filed a claim petition, alleging therein that she sustained an injury in the "lumbar region of the spine with pain radiating down [her] right leg/foot" in the course of her employment on April 8, 2016. WCJ 8/11/2017 Dec. at 1, Reproduced Record (R.R.) at 450a. Employer opposed the claim petition. On July 8, 2016, Claimant amended the claim petition to allege an injury date of April 5, 2016, and Employer amended its answer accordingly. Following several hearings, on August 11, 2017,[5] WCJ Audrey Timm (WCJ Timm) granted Claimant's claim petition and awarded temporary total disability benefits beginning April 26, 2016, concluding: "**Claimant** met her burden of proving that she **sustained an aggravation**[6] **of her pre[]existing lumbar degenerative disc disease and spondylosis**, **as well as lumbar radiculopathy as a result of her** . . . **work activities**, which [we]re a substantial contributing factor in causing her [] disability."[7] WCJ 8/11/2017 Dec. at 9, R.R. at 458a (emphasis added). WCJ Timm found: "Despite extensive treatment for back pain prior to April 5, 2016, Claimant had not been diagnosed with lumbar radiculopathy into the right leg by any of her physicians." *Id.* Accordingly, WCJ Timm held that Claimant's preexisting lumbar

---

[5] According to the record, Employer terminated Claimant's employment in January 2017. *See* WCJ 7/19/2019 Dec. at 4, R.R. at 35a.

[6] "It is well settled in Pennsylvania that an 'aggravation of a pre[]existing condition' is deemed a new injury for purposes of [WC] law[.]" *S. Abington Twp. v. Workers' Comp. Appeal Bd. (Becker & ITT Specialty Risk Servs.)*, 831 A.2d 175, 181 (Pa. Cmwlth. 2003).

[7] WCJ Timm's decision relied on the testimony of Claimant's orthopedic surgeon Christian I. Fras, M.D., (Dr. Fras) with whom Claimant began treating in July 2016. *See* WCJ 8/11/2017 Dec. at 9, R.R. at 458a; *see also* R.R. at 128a-150a.

degenerative disc disease and spondylosis were aggravated by Claimant's work in April 2016, and her lumbar radiculopathy was a new injury that resulted therefrom.

On June 5, 2018, Claimant underwent an independent medical examination (IME) with Dr. McHugh. As part of Dr. McHugh's examination he reviewed Claimant's medical records, obtained her medical history and physically examined Claimant. In his IME report, Dr. McHugh opined: "[**Claimant**] **is fully recovered from the** . . . **aggravation of the pre**[]**existing lumbar degenerative disc disease**, **spondylosis and lumbar radiculopathy**." R.R. at 443a (emphasis added). Dr. McHugh, who is an orthopedic surgeon, explained: "At this point in time, two years removed from the aggravation[,] . . . two years of full treatment along with two years of not performing any activities at work[] has brought her back to her baseline." R.R. at 444a. Dr. McHugh declared that no further care was necessary, and Claimant could return to full-duty work without restriction related to her April 2016 work injury. *See* R.R. at 443a-444a.

On June 21, 2018, Employer filed the Termination Petition,[8] therein asserting that Claimant fully recovered from her April 8, 2016 work injury as of June 5, 2018. Claimant opposed the Termination Petition. On February 8, 2019, Claimant filed a Petition for Penalties (Penalty Petition), wherein she alleged that Employer violated the WC Act (Act)[9] by failing to pay her medical bills. Employer denied the averments in the Penalty Petition. The Petitions were assigned to WCJ Craig for disposition.

WCJ Craig conducted hearings on the Petitions on June 19, July 26, and October 29, 2018, and February 13, 2019.[10] On July 19, 2019, WCJ Craig granted Employer's Termination Petition, and denied and dismissed Claimant's

---

[8] Included in the Termination Petition was a request for supersedeas, which WCJ Craig denied on August 17, 2018.

[9] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[10] Claimant presented no evidence to support her Penalty Petition.

4

Penalty Petition. Claimant appealed to the Board, arguing that WCJ Craig improperly relitigated Claimant's work injury description and found Dr. McHugh's opinion credible.

On June 11, 2020, the Board reversed WCJ Craig's decision, declaring that WCJ Craig erroneously relied on Dr. McHugh's opinion, which failed to recognize Claimant's judicially established work injury.[11] The Board also modified WCJ Craig's decision wherein she ruled that Employer was no longer responsible for paying medical expenses related to Claimant's preexisting degenerative disc disease because Dr. McHugh credibly opined that Claimant had fully recovered from that condition. Employer appealed to this Court.[12]

Employer argues that the Board erred by concluding that Dr. McHugh's opinion that Claimant no longer suffered from lumbar radiculopathy was not competent or sufficient to support the Termination Petition. Specifically, Employer claims that since Dr. McHugh unequivocally testified that Claimant did not suffer from any radiculopathy as of the time of her June 5, 2018 IME, whether Dr. McHugh specifically recognized that Claimant's judicially established April 8, 2016 work injury caused new radiculopathy or aggravated her preexisting radiculopathy was of no consequence.

Preliminarily, Section 413(a) of the Act states, in pertinent part:

A [WCJ] . . . may, at any time, . . . terminate . . . an award of . . . [a WCJ], upon petition filed by either party . . . , upon proof that the disability of an injured employe has . . . finally ceased . . . . Such . . . termination shall be made

---

[11] The Board Chairman dissented.

[12] "[This Court's] review determines whether there has been a violation of constitutional rights, whether errors of law have been committed, whether board procedures were violated, or whether necessary findings of fact are supported by substantial evidence." *Bryn Mawr Landscaping Co. v. Workers' Comp. Appeal Bd. (Cruz-Tenorio)*, 219 A.3d 1244, 1252 n.5 (Pa. Cmwlth. 2019).

5

as of the date upon which it is shown that the disability of the injured employe has . . . finally ceased[.]

77 P.S. § 772. "Under [WC] law, the term 'disability' is synonymous with loss of earning power." *Donahay v. Workers' Comp. Appeal Bd. (Skills of Cent. PA, Inc.)*, 109 A.3d 787, 792 (Pa. Cmwlth. 2015).

Specifically, to succeed in a termination petition, an employer must prove by substantial evidence that the claimant's work-related injury has ceased, or any remaining conditions are not related to her work injury. *See Baumann v. Workers' Comp. Appeal Bd. (Kellogg Co.)*, 147 A.3d 1283 (Pa. Cmwlth. 2016). "An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from her work-related injuries." *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). Medical expert testimony proffered in support of a termination proceeding must recognize the claimant's accepted work-related injury to be competent to opine that the claimant has fully recovered therefrom. *See Sarmiento-Hernandez v. Workers' Comp. Appeal Bd. (Ace Am. Ins. Co.)*, 179 A.3d 105 (Pa. Cmwlth. 2018); *see also Westmoreland Cnty.*

Finally,

[i]t is well-settled that an employer may not re-litigate, by way of a petition to terminate benefits, the original medical diagnosis underlying a WCJ's finding of a claimant's disability as of the date of the compensation award. *Hebden v. Workmen's Comp*[.] *Appeal B*[d.] *(Bethenergy Mines, Inc.)*, . . . 632 A.2d 1302, 1304 ([Pa.] 1993). To do so would violate the doctrine of collateral estoppel, which 'forecloses re-litigation in a later action, of an issue of fact or law which was actually litigated and which was necessary to the original judgment.' *Id.* (quoting *City of Pittsburgh v. Zoning B*[d.] *of Adjustment of* [*the City of*] *Pittsburgh*, . . . 559 A.2d 896, 901 ([Pa.] 1989)).

*Inservco Ins. Servs. v. Workers' Comp. Appeal Bd. (Purefoey)*, 902 A.2d 574, 578 (Pa. Cmwlth. 2006).

Here, Employer presented Dr. McHugh's June 5, 2018 IME report and testimony in support of the Termination Petition. Dr. McHugh recalled Claimant informing him that she had experienced low back pain on and off for years but, in the spring of 2016, she had increased low back pain that radiated into her right leg while going up and down stairs at work. *See* R.R. at 405a. He testified that Claimant described the April 2016 symptoms as the same as she had experienced in the past, but to a more intense degree. *See id.* Dr. McHugh described that Claimant had been treating with her rheumatologist monthly, and a neurosurgeon every couple of months, both of whom gave her injections that afforded her little relief. He stated that Claimant's objective tests since 2009 reflected disc pathology and arthritic issues with her low back, and rheumatology records since 2015 showed progressively worsening joint pain. *See* R.R. at 409a-410a. Dr. McHugh reviewed Claimant's March 2016 blood test results that were positive for an autoimmune issue, which her doctors felt contributed to her chronic back pain. *See* R.R. at 410a-411a. He recollected that Claimant's June 8, 2016 lumbar MRI demonstrated degenerative disc protrusions and bulges. *See* R.R. at 411a. Dr. McHugh also reviewed Claimant's physical therapy and other medical records. According to Dr. McHugh, an August 9, 2016 EMG conducted by her rheumatologist showed what the rheumatologist interpreted as right L5-S1 acute radiculopathy. *See id.* Dr. McHugh further recalled that Claimant was considering undergoing lumbar surgery in 2018. *See* R.R. at 420a-421a, 440a.

Dr. McHugh testified that, during his IME, Claimant complained of low back pain that radiated into different areas of her right leg at different times, which he attributed to chronic degeneration of her lumbar spine. *See* R.R. at 406a-407a. He described that Claimant exhibited limited lumbar range of motion, due to

7

stiffness and her obesity. *See* R.R. at 413a, 421a-422a. Dr. McHugh stated that Claimant did not exhibit a radicular component in her legs at the IME, her subjective complaints did not follow any specific dermatomal pathway, and she walked with a normal gait. *See* R.R. at 413a-415a.

Based upon the IME, Dr. McHugh opined, within a reasonable degree of medical certainty that, in April 2016, **Claimant** "**did have an exacerbation of the preexisting lumbar degenerative disc disease**, **the arthritis in her back and the lumbar radiculopathy that had pre**[-]**dated this but had flared up due to those work incidents**[,]" but that, as of June 5, 2018, Claimant "was fully recovered from that flare[-]up and [] she needed no further care related to that work issue." R.R. at 415a (emphasis added). He confirmed that the issues Claimant is currently having are related to the degenerative findings and autoimmune issues that pre-date her work injury, and her obesity. *See* R.R. at 417a-418a. Dr. McHugh reiterated that Claimant could return to work without continuing treatment or restrictions related to her April 2016 work injury, and he executed a physician's affidavit of recovery to that effect. *See* R.R. at 419a, 422a, 445a-446a.

Claimant testified that she still experiences low back pain radiating into her right leg and foot with tingling and muscle spasms that have improved since she stopped working. However, she does not feel capable of returning to her pre-injury job due to the walking, squatting, bending and driving it requires.

Claimant also presented the October 19, 2016 and November 16, 2018 testimony of orthopedic surgeon Christian I. Fras, M.D. (Dr. Fras). Dr. Fras testified that he first treated Claimant on July 26, 2016, and found that her condition was consistent with radiculopathy. He recalled that, when he saw Claimant twice in August 2016, her symptoms continued, and he diagnosed her with degenerative disc disease, spondylosis, and lumbar radiculopathy. *See* R.R. at 132a, 134a. Dr. Fras

related that, when Claimant's symptoms were unchanged in October 2016, Dr. Fras referred her for injections to help with pain management.

Dr. Fras stated that he treated Claimant again on February 27, 2018, at which time she still had low back and right leg pain complaints that physical therapy and injections had not alleviated. He also treated her on May 1 and July 17, 2018. Based on Claimant's objective tests, medical history and physical examinations, he declared that his diagnosis remained the same and he discussed additional treatment options, including surgery. Dr. Fras concluded that Claimant continued to suffer from her accepted work-related injuries, and she was not capable of returning to her pre-injury work but, conceivably, could do a light-duty or sedentary job with restrictions. *See* R.R. at 211a-212a, 237a. Dr. Fras disagreed with Dr. McHugh's opinions to the contrary. *See* R.R. at 213a.

"The WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). "The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000).

Here, based on the evidence presented, WCJ Craig found:

> While Claimant's testimony about her pain and disability is not necessarily incredible, the issue of whether she is fully recovered from the judicially determined work injury of aggravation of pre[]existing lumbar degenerative disc disease and spondylosis, and lumbar radiculopathy and whether the cause of her current complaints is the work injury or the underlying degenerative disc disease itself is a medical issue.

WCJ 7/19/2019 Dec. at 8, R.R. at 39a. Regarding the medical testimony, WCJ Craig made the following finding:

9

I have carefully reviewed the testimony of Dr. McHugh and Dr. Fras. While both doctors have excellent qualifications, I find the opinions of Dr. McHugh more credible than those of Dr. Fras and reject the opinions of Dr. Fras wherever they conflict with those of Dr. McHugh. Dr. McHugh's opinions are supported by Claimant's medical records and by diagnostic studies performed before the work injury, which document Claimant's longstanding history of low back complaints and treatment. Dr. Fras acknowledged this history. The very fact that Claimant visited her rheumatologist on March 29, 2016 (over a week before her April 8, 2016 work injury) for the purpose of having F[M]LA forms completed in order to take 12 weeks off work to have physical therapy, at which time Claimant 'was very insistent that she was not able to work due to her pain' and at which time she received a work note excusing her from work until May 24, 2016[,] for physical therapy for chronic back pain, indicates how severe her pre-injury condition was.[13]

WCJ 7/19/2019 Dec. at 8, R.R. at 39a. Thus, WCJ Craig found Dr. McHugh's testimony more credible than Dr. Fras' testimony to the contrary, and concluded that "Employer [] met its burden of proving that Claimant was fully recovered from her April 2016 work injury as of June 5, 2018." WCJ 7/19/2019 Dec. at 9, R.R. at 40a.

Neither the Board nor the Court may reweigh the evidence or the WCJ's credibility determinations. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771

---

[13] WCJ Craig clarified:

In finding credible Dr. McHugh's opinion that Claimant is fully recovered from the April 2016 aggravation of preexisting lumbar degenerative disc disease, spondylosis, and lumbar radiculopathy, it is not my intention in any way to ignore, minimize, or rewrite [WCJ] Timm's previous determination that the work injury caused an aggravation of Claimant's pre[]existing condition. Her pre-injury history of low back pain is referenced with regard to my rejection of Dr. Fras' opinion that[,] before April 2016[,] Claimant's low back pain was not severe.

WCJ 7/19/2019 Dec. at 8 n.2, R.R. at 39a.

10

A.2d 1246 (Pa. 2001). Specifically, "Section 422(a) [of the Act, 77 P.S. § 834,] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. [Thus, u]nless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal."[14] *Pa. Uninsured Emps. Guar. Fund v. Workers' Comp. Appeal Bd. (Lyle)*, 91 A.3d 297, 303 (Pa. Cmwlth. 2014) (quoting *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006) (citation omitted)).

> Furthermore, this Court has held:

> "In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder [(i.e., Employer)]." "Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party." It does not matter if there is evidence in the record supporting findings contrary to those made by the WCJ; the pertinent inquiry is whether the evidence supports the WCJ's findings.

*3D Trucking Co., Inc. v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa. Cmwlth. 2007) (citations omitted) (quoting *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003)).

> Notwithstanding, the Board held:

> Upon thorough review, we determine that [] WCJ [Craig] erred in terminating Claimant's benefits when Dr. McHugh failed to recognize all of Claimant's work injuries, and therefore, failed to opine she recovered therefrom. . . . Here, former litigation established Claimant's work injury as an 'aggravation of her

---

[14] Capricious disregard "occurs only when the fact-finder deliberately ignores relevant, competent evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004). Capricious disregard, by definition, does not exist where, as here, WCJ Craig expressly considered and rejected the evidence. *Id.*

11

pre[]existing lumbar degenerative disc disease and spondylosis, as well as lumbar radiculopathy.' ([WCJ 8/11/2017 Dec. at 9, R.R. at 458a]). Moreover, WCJ Timm accepted [that] the lumbar radiculopathy was a new finding, rather than an aggravation. However, Dr. McHugh testified that Claimant sustained work-related exacerbations of her pre[]existing lumbar degenerative disc disease, back arthritis, and lumbar radiculopathy, of which she fully recovered as of the IME. Notably, Dr. McHugh did not accept the entire judicially determined work injuries including aggravation of spondylosis or that the lumbar radiculopathy was a new injury, rather than a pre-existing one which was exacerbated. This is an important distinction because if Claimant had pre[]existing lumbar radiculopathy, her baseline would be different than where she had no prior lumbar radiculopathy. Therefore, when Dr. McHugh testified that Claimant was back to her baseline, he mischaracterized her pre-injury condition. Because [a] defendant is barred by *res judicata* from relitigating [a] claimant's original diagnosis during a termination petition, [Employer] is barred here from asserting that Claimant never sustained spondylosis and sustained an aggravation of lumbar radiculopathy rather than a first-time injury of radiculopathy. *Hebden*. Likewise, Dr. McHugh's testimony was insufficient to terminate Claimant's benefits and we must reverse in part. . . .[FN]6

> [FN]6 Claimant also argues that [] WCJ [Craig] erroneously re-litigated Claimant's description of injury as determined in WCJ Timm's decision, and was barred from finding a different injury existed by the doctrine of *res judicata*. While we need not reach this issue here where we have reversed for other reasons, we do not find Claimant's argument persuasive. While [Employer] failed to acknowledge the full judicially accepted work injury description, [] WCJ [Craig] throughout the [d]ecision consistently refers back to the original injury description found by WCJ Timm. In fact, [] WCJ [Craig] specifically finds that Claimant fully recovered from 'aggravation of pre[]existing lumbar degenerative disc disease and spondylosis, and lumbar radiculopathy.' (Finding of Fact 12). Rather, [] WCJ [Craig] erred by accepting the

12

> insufficient testimony of Dr. McHugh, who failed
> to recognize all of the accepted work injuries.

Board Op. at 6-8, R.R. at 58a-60a (record citations omitted).

This Court acknowledges that Dr. McHugh testified that Claimant suffered "an exacerbation of the preexisting lumbar degenerative disc disease, *the arthritis in her back* and the lumbar radiculopathy that had predated" April 2016, R.R. at 415a (emphasis added), and that he did not specifically use the term *spondylosis*. However, in his June 5, 2018 IME report, Dr. McHugh specifically declared: "[Claimant] is fully recovered from the . . . *aggravation of the pre[]existing* lumbar degenerative disc disease, *spondylosis* and lumbar radiculopathy." R.R. at 443a (emphasis added). Moreover, medical professionals may use the terms *spondylosis* and *arthritis* interchangeably.[15] Because Dr. McHugh clearly accepted Claimant's judicially determined preexisting spondylosis in rendering his opinion, the Board erred by concluding otherwise.

This Court also recognizes that Dr. McHugh appears to have considered Claimant's lumbar degenerative disc disease, spondylosis *and* lumbar radiculopathy as preexisting, and he did not separately refer to Claimant's lumbar radiculopathy as a *new* injury. *See* R.R. at 415a, 443a. However, Dr. McHugh ultimately opined with unequivocal and competent medical testimony, which WCJ Craig accepted, that Claimant fully recovered from *all three* conditions as of June 5, 2018, and any disability (loss of earnings) thereafter was no longer related to her work. The fact that Dr. McHugh construed Claimant's lumbar radiculopathy in these circumstances as a preexisting rather than new work injury did not render his testimony incompetent.

---

[15] Spondylosis has been defined as "degenerative spinal changes due to OSTEOARTHRITIS." Medical Dictionary, The Free Dictionary, https://medical-dictionary.thefreedictionary.com/spondylosis (last visited Apr. 21, 2021) (emphasis added).

13

This Court has held that "a medical expert need not [even] necessarily believe that a particular work injury actually occurred[;] . . . the expert's opinion is competent if he assumes the presence of a previously accepted work-related injury and finds it to be resolved by the time of his examination." *O'Neill v. Workers' Comp. Appeal Bd. (News Corp. Ltd.)*, 29 A.3d 50, 57 (Pa. Cmwlth. 2011); *see also Hall v. Workers' Comp. Appeal Bd. (Am. Serv. Grp.)*, 3 A.3d 734 (Pa. Cmwlth. 2010); *To v. Workers' Comp. Appeal Bd. (Insaco, Inc.)*, 819 A.2d 1222 (Pa. Cmwlth. 2003). Here, Dr. McHugh expressly acknowledged that Claimant suffered lumbar radiculopathy related to her work activity in April 2016 but, based upon his review of Claimant's history, voluminous medical records, and physical examination, concluded that, as of June 5, 2018, she had fully recovered from the judicially accepted injuries and her inability to return to work was not related thereto. Thus, Dr. McHugh's opinion was not incompetent in this instance merely because he construed Claimant's lumbar radiculopathy as preexisting rather than a new work injury.

Based on the foregoing, the Board erred by reversing WCJ Craig's decision on the basis that Dr. McHugh's opinion was incompetent and insufficient to support Employer's Termination Petition. Viewing the evidence in a light most favorable to Employer, and drawing all reasonable inferences in Employer's favor, as we must, we find that substantial record evidence supported WCJ Craig's findings. Accordingly, the Board's order is reversed.

_____
ANNE E. COVEY, Judge

14

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia Housing Authority,      :
                         Petitioner   :
                                   :

              v.                 :
                                   :

Workers' Compensation Appeal   :
Board (Butt),                 :    No. 633 C.D. 2020
                  Respondent   :

## O R D E R

AND NOW, this 22nd day of April, 2021, the Workers' Compensation Appeal Board's June 11, 2020 order is reversed.

_____
ANNE E. COVEY, Judge