**Mary Ann GRIFFITHS, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (RED LOBSTER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 12, 1999.

Decided Sept. 27, 2000.

George E. Mehalchick, Scranton, for petitioner.

Thomas P. Cummings, Scranton, for respondent.

BEFORE: DOYLE, President Judge, KELLEY, Judge, NARICK, Senior Judge.

DOYLE, President Judge.

Mary Ann Griffiths (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed the Workers' Compensation Judge's (WCJ) dismissal of Claimant's petition for reinstatement of workers' compensation benefits.

The pertinent factual background is as follows: On March 18, 1990, while working for Red Lobster (Employer), Claimant sustained an injury. A Notice of Compensation Payable was subsequently issued describing injuries to Claimant's neck, back and shoulder.

On January 7, 1991, Employer filed a petition to suspend Claimant's benefits contending that Claimant was released to return to full time employment without restrictions, that it offered Claimant a position as a shrimp splitter/peeler, and that Claimant refused to accept the job. The WCJ agreed and granted Employer's petition. The WCJ, based on the testimony of Employer's medical expert, held that Claimant was capable of performing the shrimp splitter/peeler position, and, therefore, granted Employer's suspension petition based on Claimant's bad faith in pursuing an available job opportunity. Claimant thereafter appealed to the Board and the Board affirmed the WCJ's decision on January 18, 1995. Claimant did not appeal the Board's decision.

Instead, on June 16, 1995, Claimant filed a petition to reinstate compensation benefits alleging that, as of January 19, 1995, the day after Claimant's appeal was dismissed by the Board, she sustained a re-aggravation of her work-related injury. In support of her petition, Claimant presented the deposition testimony of James Butcofski, M.D., who is board certified in family medicine. In opposition, Employer presented the deposition testimony of John H. Presper, M.D., who is board certified in neurosurgery.

Dr. Butcofski testified that he first examined Claimant on March 27, 1990, concerning her March 18, 1990 work-related injury. It was his opinion that Claimant sprained her cervical and lumbar spine secondary to the fall that she had at work. Three MRI studies that were conducted shortly after the March 18th injury showed no herniation of disc material.

Dr. Butcofski continued treating Claimant for the next four or five years. During that time, Dr. Butcofski referred her to a neurosurgeon and a neurologist, which referrals resulted in Claimant undergoing additional MRI and EMG studies. Dr. Butcofski testified that, after he reviewed the MRI and EMG studies, his initial opinion as to the type of injury sustained by Claimant had changed. Dr. Butcofski testified that the MRI administered on December 13, 1993 showed a small herniated disc at C6 and C7 in the midline, and a mild spondylosis with a bulging disc at C4 and C5. In addition, the doctor stated that Claimant had mild herniation in the lower back.

With regard to the EMG studies, which were administered on April 14, 1993, Dr. Butcofski testified that Claimant had an abnormal EMG nerve conduction study with nerve root irritation in the lower back and upper extremities. Ultimately, Dr. Butcofski opined that his earlier diagnosis of a simple sprain was inaccurate, and that Claimant suffers from ruptured discs in both the lower and upper portion of her back. Dr. Butcofski testified that the sprain, coupled with her continued ambulation, could have caused her current disc herniations. Therefore, Dr. Butcofski opined that Claimant was unable to perform any gainful employment.

Employer presented the deposition testimony of Dr. Presper, who examined Claimant on November 1, 1996. Dr. Presper performed a physical examination on Claimant and reviewed her MRI and EMG studies. Dr. Presper found no evidence of a herniated disc in the cervical or lumbosacral spine. He opined that there were no objective findings, based on the diagnostic studies and physical examination, to support Claimant's pain. Dr. Presper concluded that Claimant is completely recovered and capable of returning to employment without restrictions.

The WCJ rejected Dr. Butcofski's testimony as not credible, stating that "[t]here was insufficient evidence presented to explain how it was possible for negative MRI studies in 1990 to become abnormal in 1993, without specific testimony or evidence being offered to establish the relationship to the work related injury." (WCJ's decision, Finding of Fact No. 10, p. 5.) Nevertheless, the WCJ also rejected Dr. Presper's testimony to the extent that

he opined that Claimant does not suffer from a herniated disc as shown on the MRI studies. The WCJ, therefore, concluded that Claimant failed to meet her burden of proof to establish that any change in her condition existed as a result of her work-related injury of March 18, 1990, and that she failed to establish that she is disabled from performing her usual occupation as of January 19, 1995 due to a work injury. The WCJ thus denied Claimant's reinstatement petition. Claimant then appealed and the WCJ's decision was upheld by the Board. This appeal followed.

On appeal,[1] Claimant first argues that the Board and the WCJ committed an error of law by applying the incorrect burden of proof. Claimant maintains that the WCJ applied the burden of proof required for reinstatement from a termination, rather than reinstatement from a suspension, and that this was error because Claimant's benefits had been suspended and not terminated.

■ It is true that a claimant's burden of proof in a reinstatement petition is different depending upon whether his or her benefits were terminated or suspended. As our Supreme Court has outlined in *Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 584 A.2d 301 (1990), if a claimant petitions for reinstatement of benefits following a termination, then the claimant must establish a causal connection between his current condition and the prior work-related injury in order to have benefits reinstated.

■ On the other hand, a claimant's benefits may be suspended where there is a finding that the earning power of the claimant is no longer affected by his physical *disability,* but there is a continuing injury. This usually arises where the claimant's employer offers suitable replacement employment, or from the claim-

ant's ability to secure his own employment. In order to obtain a reinstatement from a suspension, therefore, a claimant must prove that, through no fault of his own, his earning power is once again adversely affected by his disability, and, that the disability which gave rise to his original claim, in fact, continues. *Id.* There is a presumption that the continuing *injury* is, however, the same injury that caused the original disability. *Id.*

The burden of proof, however, is different where a suspension of benefits occurs due to the bad faith of the claimant. In *Spinabelli v. Workmen's Compensation Appeal Board (Massey Buick, Inc.),* 149 Pa.Cmwlth. 362, 614 A.2d 779 (1992), *petition for allowance of appeal denied,* 533 Pa. 654, 624 A.2d 112 (1993), the claimant's compensation benefits were suspended because the employer offered the claimant employment within his physical restrictions but the claimant had refused such employment. The claimant thereafter petitioned for reinstatement of benefits, and we held that:

> claimant's loss of earning power is not due to his disability, but due to his lack of good faith in pursuing work made available to him which was within his physical limitations. In order to receive a reinstatement of total disability benefits, **claimant must prove a change in his condition such that he could no longer perform the jobs previously offered to him.**

*Spinabelli,* 614 A.2d at 780 (emphasis added).

*Signorini* is another example of a case where the claimant's loss of earnings was due to his bad faith and not his disability. In *Signorini,* the claimant and his employer entered into a supplemental agreement which suspended his benefits. Thereafter, the claimant maintained work with his em-

---

1. Our standard of review is limited to a determination of whether there has been a violation of constitutional rights, whether an error of law has been committed, and whether all necessary findings of fact are supported by substantial evidence. *Signorini v. Workmen's Compensation Appeal Board (United Parcel Service),* 664 A.2d 672 (Pa.Cmwlth.1995).

ployer but was later terminated for willful misconduct. We held that "[w]here a claimant is discharged for willful misconduct, he must show a change in circumstances, for instance, that his medical condition has worsened to the point that he can no longer perform the job he had been doing at the time of his discharge." *Signorini,* 664 A.2d at 676, citing *Southeastern Pennsylvania Transportation Authority (SEPTA) v. Workmen's Compensation Appeal Board (Pointer),* 145 Pa.Cmwlth. 539, 604 A.2d 315 (1992).

■ In the present case, Claimant's benefits were suspended because she rejected a suitable, available job offered by Employer. Thus, her benefits were suspended due to her bad faith, not because of her disability. Therefore, the proper burden of proof applicable in this case is the burden we established in *Spinabelli* and *Signorini;* that is, Claimant must establish that her medical condition worsened to the point that she can no longer perform the employment that had been offered to her and which she refused.

In Conclusion of Law No. 3, the WCJ stated that "[t]he Claimant has failed to meet her burden of proof to establish that any change in her condition existed as a result of the work related injury of March 19, 1990"; and in Conclusion of Law No. 4, the WCJ stated that the "Claimant has failed to meet her burden of proof to establish that she is disabled from performing her usual occupation on and after January 19, 1995, as a result of any condition which occurred prior to that date or was work related." It is evident, therefore, that the WCJ applied the proper burden of proof in this case.

Claimant next argues that, if we decide the WCJ applied the correct standard of proof here, sufficient evidence exists in the record to sustain her burden in any event.

Claimant maintains that the record demonstrates that her earning power has once again been adversely affected by her disability and that her condition has worsened since her original work injury. Claimant cited Dr. Butcofski's testimony to support her arguments. The WCJ, however, rejected Dr. Butcofski's testimony as not credible. The WCJ specifically rejected Dr. Butcofski's opinion that her herniated discs stem from her original work-related injury, and that she was unable to perform any gainful employment. The WCJ based his credibility determination, in part, on Dr. Butcofski's inconsistent testimony regarding the severity of her original work injury.

■ While the WCJ did reject Dr. Presper's testimony that Claimant does not suffer from herniated discs, the WCJ did not reject Dr. Presper's ultimate conclusion that Claimant had recovered and could return to full employment. It is well established that the WCJ is the ultimate fact finder and is empowered to determine witness credibility and evidentiary weight. *Buczynski v. Workmen's Compensation Appeal Board (Richardson–Vicks, Inc.),* 133 Pa.Cmwlth. 532, 576 A.2d 421 (1990). The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses. *Hills Department Store # 59 v. Workmen's Compensation Appeal Board (McMullen),* 166 Pa.Cmwlth. 354, 646 A.2d 1272 (1994), *petition for allowance of appeal denied,* 540 Pa. 587, 655 A.2d 518 (1995).

■ Because the WCJ rejected Dr. Butcofski's testimony as not credible, Claimant failed to establish that her medical condition had worsened to the point that she could no longer perform the job which she had rejected.[2]

---

2. Claimant also argues that the WCJ capriciously disregarded evidence in the record when he made his decision to deny Claimant's reinstatement petition. We note, however, that where the burdened party is the only party to present evidence and does not prevail before the agency, the appropriate standard of review is whether the agency erred as a matter of law or capriciously disregarded competent evidence. *Socha v. Workers' Com-*

For the foregoing reasons, we will affirm the Board.

### *O R D E R*

**NOW**, September 27, 2000, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

*pensation Appeal Board (Bell Atlantic PA),* 725 A.2d 1276 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 560 Pa. 753, 747 A.2d 373 (1999). In this case, however, both par-

ties presented evidence to the WCJ, and, therefore, the substantial evidence test is the appropriate standard of review.