IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Chrzanowski,                    :

                     :

           Petitioner   :

                     :

        v.           :  No.  590 C.D. 2020

                     :  Submitted:  October 23, 2020

Workers' Compensation Appeal   :

Board (Philadelphia Parking     :

Authority),                :

                     :

           Respondent :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                       FILED:  July 16, 2021


John Chrzanowski (Claimant) petitions for review of the June 10, 2020 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) granting Claimant's claim petition for the period of December 16, 2017, through May 3, 2018, and denying Claimant's penalty petition.  Upon review, we affirm.

On January 18, 2018, Claimant filed a claim petition alleging that he suffered injuries from a car accident on December 16, 2017, during the course and scope of his employment as a tow truck driver with the Philadelphia Parking Authority (Employer).  Reproduced Record (R.R.) at 1a-5a.  Claimant also filed a

penalty petition, alleging that Employer violated the Workers' Compensation Act (Act)[1] by failing to issue documents and pay indemnity benefits. *Id.* at 9a-12a. Employer filed an answer denying the relevant allegations in Claimant's penalty petition. *Id.* at 14a.

The WCJ held several hearings, at which Claimant testified on his own behalf and presented the deposition testimony of Dr. Rodriguez, a board-certified internist, and Dr. Cohen, a board-certified neurologist. Employer presented the testimony of Colin Hand, the other driver involved in the accident, and Joann Hand, Colin Hand's mother. Employer also presented the deposition testimony of Dr. Mandel, a board-certified orthopedic surgeon.

Claimant testified that, while at work on December 16, 2017, his parked, 18,000-pound tow truck was struck by a vehicle while he was sitting in the cab. R.R. at 34a; 41a. Claimant testified that his tow truck was forced into the air and up onto the curb. *Id.* at 34a. Claimant admitted that he told his supervisor, John Daly, at the scene of the accident that he was not injured. *Id.* at 49a. Claimant testified that when he returned to Employer's parking lot and filled out an accident report, he informed Mr. Daly that he was experiencing back pain. *Id.* Claimant stated that he sought treatment for his back pain first from an urgent care center and then from Employer's doctor. *Id.* at 36a. Claimant testified that Employer's doctor treated him with ibuprofen and sent him back to work. *Id.* at 38a. Claimant testified that he stopped working on December 25, 2017, due to intense pain in his neck, shoulders, mid back, lower back, and right leg. *Id.* at 39a. Claimant then sought treatment from Dr. Rodriguez. *Id.* at 40a. Claimant testified

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

2

that he can no longer perform his job duties as a tow truck driver and has ceased to operate his business as a carpenter due to his work injury. R.R. at 41a-43a.

Claimant testified that he has received three injections to his neck and back for pain, but that his condition has only improved by 10%. R.R. at 66a-73a. Claimant testified that he continues to suffer from pain radiating down both of his arms and his right leg, headaches, and back pain. *Id.* at 67a. Claimant admitted that he is spending most of his time at his beach house in Egg Harbor, New Jersey, and drives 60 miles to and from Philadelphia 3 times a week for appointments with Dr. Rodriguez. *Id.* at 78a-79a.

Colin Hand testified that he was the driver of the other vehicle involved in the accident on December 16, 2017. R.R. at 101a. Hand testified that his steering wheel locked, causing his car to drift into the driver's side front wheel of Claimant's tow truck at about 10 to 15 miles per hour. *Id.* at 103a-05a. Hand stated that he disagreed with Claimant's testimony that the tow truck was lifted into the air in the accident. *Id.* at 109a. Hand said that his vehicle pushed Claimant's tow truck a couple of inches closer to the curb, but did not cause the tow truck to strike the curb. *Id.* at 109a-10a. Hand testified that Claimant told him that he was okay immediately after the accident. *Id.* at 111a-13a; 120a.

Joann Hand, Colin Hand's mother, testified that she spoke to Claimant on the phone after the accident. R.R. at 125a. She testified that Claimant denied being injured. *Id.* She also stated that she was at the scene of the accident for an hour and 20 minutes and that she did not observe any injuries to Claimant. *Id.* at 127a.

Dr. Rodriguez testified that she began treating Claimant on January 2, 2018. R.R. at 180a. Dr. Rodriguez testified that after examining Claimant, she

3

diagnosed him with a strain and sprain of the lumbar spine, a sprain and strain of the cervical spine, post traumatic headaches, and a sprain and strain of the thoracic area. *Id.* at 186a-87a. Dr. Rodriguez testified that magnetic resonance imaging (MRI) of Claimant performed on January 9, 2018, revealed a cervical syrinx at C6-C7, an annular tear a L4-L5, and degenerative changes, including osteophytes and disc bulges. *Id.* at 188a-89a. Dr. Rodriguez testified that based on the MRI and Claimant's medical history, it was her opinion that Claimant's injuries were causally related to the work accident. *Id.* at 188a-191a. Dr. Rodriguez testified that Claimant could not return to his pre-injury position because of the injuries that he sustained in the work accident. R.R. at 197a.

Dr. Cohen testified that he began treating Claimant on February 7, 2018, upon a referral from Dr. Rodriguez. R.R. at 267a. Dr. Cohen took a medical history, examined Claimant, and ordered diagnostic tests. *Id.* at 270a-71a. Dr. Cohen opined that Claimant had cervical radiculopathy at the C4-C6 level and lumbar radiculopathy at L4-L5. *Id.* at 276a. Dr. Cohen testified that Claimant received injections for pain management. *Id.* at 277a. Dr. Cohen opined that Claimant's injuries were related to the work accident and that Claimant is unable to return to work. *Id.* at 280a-82a; 299a.

Dr. Mandel testified that he conducted an independent medical examination (IME) of Claimant on May 3, 2018. R.R. at 359a. Dr. Mandel took Claimant's medical history, reviewed Claimant's medical records, and examined Claimant. *Id.* at 360a-62a; 371a. Dr. Mandel testified that Claimant complained of pain at a level of 10, on a scale of 1 to 10, which Dr. Mandel found unreasonable based on his symptoms and the time since the accident. *Id.* at 362a-63a. Dr. Mandel opined that Claimant's abnormalities on diagnostic tests are degenerative

in nature and are unrelated to the work accident. *Id.* at 378a. Dr. Mandel testified that Claimant could return to his job duties without any limitation or restriction. *Id.*

On July 10, 2019, the WCJ granted Claimant's claim petition for the period of December 16, 2017, to May 3, 2018, denied Claimant's penalty petition, and ordered Employer to reimburse Claimant $9,060.15 in litigation costs. R.R. at 429a.[2] The WCJ also approved Claimant's counsel's 20% contingent fee, and awarded Claimant's counsel "an unreasonable contest fee equal to the contingent fee of 20% calculated on all indemnity benefits awarded, including interest, such fee is not chargeable to Claimant's benefits." *Id.* In doing so, the WCJ found that Claimant met his burden of showing that he sustained a work injury on December 16, 2017. *Id.* However, the WCJ found that Claimant had fully recovered from all work injuries as of May 3, 2018. *Id.* The WCJ discredited Claimant's testimony regarding the severity of the accident and credited Colin Hand and Joann Hand's testimony. *Id.* Regarding the nature and extent of Claimant's injuries, the WCJ credited Dr. Mandel's testimony, credited Dr. Rodriguez's testimony, in part, and discredited Dr. Cohen's testimony. *Id.*

Both Claimant and Employer appealed the WCJ's decision to the Board. On June 10, 2020, the Board affirmed the WCJ's decision. Claimant now petitions this Court for review.[3]

---

[2] The WCJ circulated an amended decision and order on July 22, 2019, correcting a typographical error in the termination date from May 3, 2016, to May 3, 2018. R.R. at 432a-33a.

[3] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

**Issues**

On appeal, Claimant argues that the Board erred in failing to address the WCJ's capricious disregard of all of the record evidence by merely conducting a "substantial evidence" review of the evidence relied upon by the WCJ. Claimant also asserts that the WCJ failed to rely on "actual, objective" criteria in making his credibility determinations, which are not supported by substantial evidence. Finally, Claimant contends that the WCJ improperly, *sua sponte* reduced the amount of attorney fees. Upon review, we disagree.

**Analysis**

Preliminarily, we note that in a claim petition proceeding, the claimant bears the burden of proving all of the elements necessary to support an award, including the duration and extent of the disability. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 594 (Pa. 1993). "It is well established that the WCJ is the ultimate fact finder and is empowered to determine witness credibility and evidentiary weight." *Griffiths v. Workers' Compensation Appeal Board (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000). As the ultimate fact finder, the WCJ's findings are binding on appeal if they are supported by substantial evidence. *Moore v. Workmen's Compensation Appeal Board (Reading Paperboard Corporation)*, 652 A.2d 802, 805 (Pa. 1995). "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

In addition, a review for capricious disregard of material, competent evidence is an appropriate component of appellate review in any case in which the question is properly raised before a court. *Leon E. Wintermyer, Inc. v. Workers'*

6

*Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002); *see Diehl v. Unemployment Compensation Board of Review*, 4 A.3d 816, 824 (Pa. Cmwlth. 2010), *reversed on other grounds*, 57 A.3d 1029 (Pa. 2012). A capricious disregard of evidence occurs where the "findings reflect a deliberate disregard of competent evidence that logically could not have been avoided in reaching the decision . . . ." *Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197, 1205 (Pa. Cmwlth. 2007). Where substantial evidence supports the findings, and those findings in turn support the conclusions, it should remain a rare instance where an appellate court disturbs an adjudication based on capricious disregard. *Wintermyer*, 812 A.2d at 487. Thus, capricious disregard of evidence occurs when the fact finder ignores relevant, competent evidence. *Williams v. Workers' Compensation Appeal Board (USX Corp.-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004). Capricious disregard does not exist when a WCJ has considered and rejected evidence. *Id.*

Claimant first argues that the WCJ capriciously disregarded overwhelming evidence in rendering his decision. We disagree. Based on the evidence, the WCJ found as fact:

> 12. This [WCJ] has reviewed Claimant's testimony and finds it credible, in small part. This [WCJ] bases this determination, in part, on Claimant's demeanor and deportment while testifying live. Claimant's testimony as to his wages and the occurrence of the accident to be credible as it is supported, in some measure, by the testimony of Colin Hand and [Joann] Hand. The extent of the accident, as described by Claimant, is not believed. The photographs, the extent of damage shown, the respective weights of the vehicles, and the low speed of the accident (which did not even result in the deployment of Mr. Hand's airbag), evidence a low impact accident as compared to the jarring, violent impact testified to by

7

Claimant. Claimant's testimony as to the nature and extent of any injuries he suffered is also discredited as [it relies] initially on an inaccurate history of the accident but also Claimant's complaints of continued, unabated pain are not credible given the credited testimony of Dr. Richard Mandel and his own continued, long-duration travels to and from New Jersey.

13. This [WCJ] has reviewed the testimony of Colin Hand and [Joann] Hand and finds both to be credible. The testimony was clear and unembellished without the apparent taint of secondary gain. This [WCJ] bases this determination on their demeanor and deportment while testifying live.

14. There is no dispute that this accident occurred and this [WCJ] believes, from the evidence submitted, that Claimant did suffer some injury, which necessitated him to treat with AtlantiCare Urgent Care Center and Aria Health. The question then remains: To what extent was Claimant injured? After reviewing the testimony of [Dr. Rodriguez], [Dr. Cohen], and [Dr. Mandel], this [WCJ] finds the testimony of Dr. Rodriguez credible in part, the testimony of Dr. Cohen not credible, and the testimony of Dr. Mandel credible.

   a. Dr. Rodriguez's testimony regarding the Claimant's injuries is accepted in part. As she was Claimant's initial treating physician, this [WCJ] affords Dr. Rodriguez some measure of credibility; however, where Dr. Rodriguez found any injuries beyond strains and sprains of the cervical and lumbar spine, her testimony is rejected. This [WCJ] notes that Dr. Rodriguez, like Dr. Cohen, bases her opinions of the extent of Claimant's injuries upon an inaccurate description of the accident. Her attribution of post-concussion symptoms despite doubt as to whether Claimant struck his head (an occurrence even Claimant cannot verify) is problematic. Furthermore, Dr. Rodriguez's opinions as to the aggravation or exacerbation of Claimant's pre[]existing degenerative arthritis is simply not borne out by the diagnostic studies, as clearly explained by Dr. Mandel.

8

b. Dr. Cohen's testimony, ostensibly produced as rebuttal and, in this [WCJ's] estimation, to extend a finding of disability beyond the date of Dr. Mandel's [IME], is rejected. Dr. Cohen's diagnoses rely on Claimant's inaccurate (and rejected) description of the accident. As such, this [WCJ] similarly rejects Dr. Cohen's testimony.

c. Dr. Mandel's testimony, regarding Claimant's status as of May 3, 2018, is accepted. Dr. Mandel clearly, cogently, and credibly explained the findings on the cervical and lumbar MRI and their (non-) relation to Claimant's injury. The degenerative nature of the findings was clearly and credibly explained by Dr. Mandel, who likewise credibly related the lack of ongoing injury to Claimant's December 16, 2017 accident, as such Claimant is deemed to have fully recovered from any injuries he may have suffered.

R.R. at 424a-25a.

Contrary to Claimant's assertion, as outlined above, the WCJ considered and rejected Claimant's evidence regarding the severity of the accident and found "Claimant fully recovered from all work injuries as of May 3, 2018." R.R. at 426a. This rejection of Claimant's evidence does not constitute a capricious disregard of such evidence. *See, e.g.*, *Williams*, 862 A.2d at 145 ("[T]he WCJ did not deliberately ignore Dr. Landes's testimony—as evidenced by the WCJ's extensive summation thereof in Finding [of Fact] 6, which includes a summation of Dr. Landes's testimony on direct and cross-examinations—but merely considered, and then rejected as not credible, said evidence. Such an express consideration and rejection, by definition, is not capricious disregard."). As a result, the Board did not err in affirming the WCJ decision.

Next, Claimant argues that the WCJ's credibility determinations are not supported by substantial evidence. However, as articulated above, the WCJ is

9

the ultimate fact finder, and as such has complete authority over credibility determinations and the weighing of evidence. *Griffiths*, 760 A.2d at 76. It is well settled that where medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another. *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 194-95 (Pa. Cmwlth. 2006). "Some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review." *Id.* at 194-95 (quoting *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1053 (Pa. 2003)). There are countless objective factors that may support a WCJ's credibility determinations, and such factors must be identified in the WCJ's decision. *Dorsey*, 893 A.2d 195.

Nevertheless, we have repeatedly stressed that Section 422(a) of the Act[4] does not permit a party to challenge or second-guess a WCJ's reasons for

---

[4] Section 422(a) of the Act states that

> [a]ll parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

**(Footnote continued on next page…)**

10

credibility determinations. *Id.*; *Kasper v. Workers' Compensation Appeal Board (Perloff Brothers, Inc.)*, 769 A.2d 1242, 1244 (Pa. Cmwlth. 2001). In *Kasper*, we declined the claimant's "invitation to individually scrutinize each of the WCJ's reasons for his credibility determination." *Id.* We explained that

> [d]eciding credibility is the quintessential function of the fact-finder, particularly one who sees and hears the testimony. It is not an exact science, and the ultimate conclusion comprises far more than a tally sheet of its various components. We will not take the statutory mandate that a WCJ explain reasons for discrediting evidence as a license to undermine the exercise of this critical function by second guessing one or more of its constituent parts.

*Id.* (footnote omitted).

In contrast, where, as here, Claimant and Colin Hand and Joann Hand testified in person before the WCJ, the WCJ could base his credibility determinations upon his observation of these witnesses during the course of their testimony. As our Supreme Court has explained:

> [W]hen the issue involves the credibility of contradictory witnesses who have actually testified before the WCJ, it is appropriate for the [WCJ] to base his or her determination upon the demeanor of the witnesses. In such an instance, there often is not much to say, nor is there a need to say much, in order for a reviewing body to determine that the decision was reasoned. Such a credibility determination may involve nothing more than the fact[]finder's on-the-spot, and oftentimes instinctive, determination that one witness is more credible than another. The basis for the conclusion that certain

---

**(continued…)**

77 P.S. §834(a).

11

testimony has the "ring of truth," while other testimony does not, may be difficult or impossible to articulate—but that does not make such judgments invalid or unworthy of deference. To the contrary, people routinely undertake affairs of consequence based upon their judgment of the credibility and reliability of others, or their assessment of the mettle and character of the persons with whom they are dealing.

*Daniels*, 828 A.2d at 1052-53. In sum then, unless made arbitrarily or capriciously, a WCJ's credibility determinations will not be disturbed when the basis for such is present in the record on appeal. *Empire Steel Castings, Inc. v. Workers' Compensation Appeal Board (Cruceta)*, 749 A.2d 1021, 1027 (Pa. Cmwlth. 2000); *PEC Contracting Engineers v. Workers' Compensation Appeal Board (Hutchinson)*, 717 A.2d 1086, 1089 (Pa. Cmwlth. 1998).

After careful review of the certified record in this matter, we conclude that the WCJ's credibility determinations are supported by ample substantial record evidence. Moreover, as outlined above, the WCJ extensively and exhaustively outlined the reasons for his credibility determinations, and, as a result, these determinations are not subject to our appellate review. Thus, we find the Board did not err by affirming the WCJ's decision in this regard.

Finally, Claimant argues that the WJC improperly, *sua sponte* reduced the award of attorney fees in this case. Again, we disagree. "Section 440(a) of the Act,[5] provides that where a claimant succeeds in a litigated case reasonable

---

[5] Added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. §996(a). Section 440(a) provides:

> In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the

**(Footnote continued on next page…)**

counsel fees are awarded against the employer, as a cost, unless the employer meets its burden of establishing facts sufficient to prove a reasonable basis for the contest." *United States Steel Corporation v. Workers' Compensation Appeal Board (Luczki)*, 887 A.2d 817, 820 (Pa. Cmwlth. 2005). "A reasonable contest is established when medical evidence is conflicting or susceptible to contrary inferences, and there is an absence of evidence that an employer's contest is frivolous or filed to harass a claimant." *Id.* The imposition of attorney fees is a question of law reviewable by the Board and this Court based upon the record. *McGoldrick v. Workmen's Compensation Appeal Board (Acme Markets, Inc.)*, 597 A.2d 1254, 1257 (Pa. Cmwlth. 1991).

In this case, the WCJ held that Employer's contest was unreasonable from January 18, 2018, until May 8, 2018, because Employer was aware of the accident and directed Claimant to seek treatment for the injuries related thereto. R.R. at 426a-29a. However, the WCJ explained:

> Claimant submitted a quantum meruit itemization of 4.4 hours (work performed between January 18, 2018, until May 3, 2018[,]) at a rate of $300 an hour; however, this [WCJ] finds such fee insufficient given the circumstances and, instead, awards an unreasonable contest fee equal to Claimant's counsel's contingent fee of 20%. Claimant's

---

**(continued…)**

> case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

counsel contingent fee agreement is approved. Claimant's counsel is entitled to a 20% contingent fee calculated on all indemnity benefits awarded, including interest, such fee is not chargeable to Claimant's benefits.

*Id.* at 426a; *see also id.* at 429a ("Claimant's counsel is awarded an unreasonable contest fee equal to the contingent fee of 20% calculated on all indemnity benefits awarded, including interest, such fee is not chargeable to Claimant's benefits.").

In affirming the WCJ's decision in this respect, the Board explained:

Regarding Claimant's contention that his [attorney] fees were reduced, we fail to see how the WCJ reduced the [attorney] fees as the WCJ awarded a higher fee than the 4.4 hours that Claimant's attorney worked during the time period in question. If Claimant is arguing that he should be entitled to the full amount of 22.3 hours, we would also disagree because the WCJ found that [Employer's] contest was reasonable after the IME was performed. Therefore, the WCJ did not err.

R.R. at 465a. We agree with the Board and discern no error of law in the WCJ's decision in this regard.

Accordingly, the Board's order is affirmed.

———————————————————
MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Chrzanowski,     :
           :
     Petitioner :
           :
   v.      : No.  590 C.D. 2020
           :
Workers' Compensation Appeal :
Board (Philadelphia Parking  :
Authority),       :
           :
     Respondent :

# **O R D E R**

AND NOW, this 16th day of July, 2021, the June 10, 2020 order of the Workers' Compensation Appeal Board in the above-captioned matter is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge