# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bobby Hampton,  
               Petitioner        :

           :

        v.                :

           :

A1 Environmental and Safety TR   :  
(Workers' Compensation Appeal   :  
Board),                     :   No. 975 C.D. 2021  
             Respondent     :   Submitted: February 3, 2023

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge  
                HONORABLE ANNE E. COVEY, Judge  
                HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY  
JUDGE COVEY                        FILED: April 24, 2023

          Bobby Hampton (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) August 4, 2021 order affirming the WC Judge's (WCJ) decision that denied Claimant's Claim Petition for WC (Claim Petition). Claimant presents one issue for this Court's review: whether the WCJ's decision was supported by substantial evidence. After review, this Court affirms.

          On April 18, 2019, A1 Environmental and Safety TR (Employer) issued a Notice of Temporary Compensation Payable acknowledging that on March 5, 2019, Claimant sustained an electric shock during the course and scope of his employment with Employer. Employer paid Claimant WC benefits at the weekly rate of $800.00 beginning on March 6, 2019. On May 1, 2019, Employer issued a Notice Stopping Temporary Compensation as of April 3, 2019. Also on May 1,

2019, Employer issued a Notice of WC Denial, therein denying that Claimant sustained an electric shock during the course and scope of his employment on March 5, 2019. On May 17, 2019, Claimant filed the Claim Petition alleging that on March 5, 2019, he sustained an electrocution injury, cervical radiculitis, lumbar radiculitis, left rotator cuff injury, left leg pain, headaches, and cervical, lumbar, and thoracic sprain/strain during the course and scope of his employment as a laborer for Employer. Claimant sought total disability WC benefits from March 5, 2019, and ongoing. Employer timely filed an Answer to the Claim Petition denying the material allegations therein.

The WCJ held hearings on June 20 and October 1, 2019, and January 28 and February 11, 2020. On August 4, 2020, the WCJ denied Claimant's Claim Petition, concluding that Claimant failed to meet his burden of proving that he sustained a work-related injury on March 5, 2019. Claimant appealed to the Board. On August 4, 2021, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[1]

Claimant argues that the WCJ's determination that he did not suffer a work injury was not supported by substantial and competent medical evidence and was not well reasoned as a matter of law.

Initially, "**a claimant seeking [WC] benefits via [a] claim petition carries the burden of proof of establishing** two things: (1) **he** or she **was injured while in the course of employment**[;] and (2) the injury resulted in a loss of earning

---

[1] "[This Court's] review determines whether there has been a violation of constitutional rights, whether errors of law have been committed, whether [B]oard procedures were violated, or whether necessary findings of fact are supported by substantial evidence." *Bryn Mawr Landscaping Co. v. Workers' Comp. Appeal Bd. (Cruz-Tenorio)*, 219 A.3d 1244, 1252 n.5 (Pa. Cmwlth. 2019).

power." *Cruz v. Workers' Comp. Appeal Bd. (Kennett Square Specialties)*, 99 A.3d 397, 407 (Pa. 2014) (emphasis added).

> "It is well established that the WCJ is the ultimate fact[-]finder and is empowered to determine witness credibility and evidentiary weight. **The WCJ**, therefore, **is free to accept or reject**, **in whole or in part**, **the testimony of any witness**, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000). In a substantial evidence challenge,
>
> > **it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ**; the critical inquiry is whether there is evidence to support the findings actually made. . . . We review the entire record to determine if it contains evidence a reasonable mind might find sufficient to support the WCJ's findings. . . . If the record contains such evidence, the findings must be upheld even though the record contains conflicting evidence.
>
> *Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (citations omitted). This inquiry requires that we "view the evidence in the light most favorable to the prevailing party and give [that party] the benefit of all inferences reasonably deduced from the evidence." *Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1161-62 (Pa. Cmwlth. 2016).

*Columbia Cnty. Comm'rs v. Rospendowski (Workers' Comp. Appeal Bd.)*, 286 A.3d 436, 445-46 (Pa. Cmwlth. 2022) (emphasis added).

Moreover, "[**a**]**n appellate tribunal** must view the WCJ's reasoning as a whole and **may overturn a credibility determination only if it is arbitrary and capricious**, **so fundamentally dependent on a misapprehension of material facts**, **or so otherwise flawed**, **as to render it irrational**." *W. Penn Allegheny Health*

3

*Sys., Inc. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (emphasis added).

Here, Claimant testified that on March 5, 2019, while working as a laborer for Employer at the Willow Grove Mall demolishing a JC Penney store, Employer instructed him to clean the area. Claimant testified that, while doing so, he attempted to grab a hose and spray water into the air to get rid of the asbestos in the air. Specifically, Claimant related:

> Q. Could you tell us what is [sic] happened while you were carrying out that job assignment?
>
> A. . . . .
>
> I had [] tried to grab the water hose that we were using to spray, because I was sweeping and the dust -- is after [sic] I was done moving everything over, I was going [to] take a water hose and spray the area, spray the area [sic] -- spray water up in the air so the dust can come down.
>
> Q. What happened when you went to pick up what you thought was a water hose?
>
> A. It wasn't a water hose. I got jolted for maybe five or six seconds and I felt it going up my spine and things, you know, I had my gloves on and I'm screaming, and there was a guy named Joe[2] behind me, maybe roughly seven feet and when I did get off of the hose -- yo, that's [sic] shot me [sic] and electrocuted me, this, that and the third. I went to go find where the cord was going or what it was, and when I walked down I looked and it was a positive connection from the outlets lying in maybe three, four inches of water. It was smoking. Then I went and looked over and I saw the superintendent, Austin [Myers (Austin)³]. I said Austin, and I yelled at him, he was over

---

[2] Joe's last name does not appear in the record, nor is there any further mention of Joe in the record.

[3] This Court refers to Austin by his first name to be consistent with the quoted witnesses' testimonies.

there talking to the welders and things. I said this thing shocked the mess out of me. . . .

Reproduced Record (R.R.) at 25a-27a.

However, Employer's supervisor, Jose Vargas (Vargas) testified, in relevant part:

Q[.] Can you explain how you came to interact with [Claimant] regarding his alleged injury?

A[.] [Claimant] was told to go and push some water out of the way that it was piling up. And he came across a cable that he saw that it was smoking, and when he saw that, he immediately looked up, and he saw the superintendent that [sic] it wasn't [sic], he wasn't too far away, maybe 50-60 feet away. And he, you know, notified him and told him that the cable was smoking and it was in a water puddle.

So immediately we secured the area. We let the subs know that, you know, whose cable it was. What was going on. And they went and took care of that so it can be safe to work in that area again.

R.R. at 335a.

Further, Employer's supervisor, Orlando Irizarry (Orlando)[4] recalled, *inter alia*:

Q[.] Did you interact with [Claimant] with regard to his allegation of a work injury on March 5, 2019?

A[.] After the fact, yes.

Q[.] Okay. How did that interaction come to be?

A[.] Well, a superintendent came to me and told me about the incident, and that's when I confronted [Claimant] and asked him what happened.

Q[.] Who is the superintendent, do you remember his name?

---

[4] This Court refers to Orlando by his first name to be consistent with the quoted witnesses' testimonies and the quoted portions of the WCJ's decision.

5

A[.] That would be Austin.

Q[.] Is he with [Employer], or with another company?

A[.] He was with the other company, our contractor.

Q[.] Okay. And you spoke to [Claimant] you said?

A[.] Yes.

Q[.] Okay. Did you specifically ask him whether he was injured?

A[.] Yes.

Q[.] What did he tell you?

A[.] He briefly told me he had grabbed a cord and that he thought he had got shocked, but he was okay. I asked him if he wanted to go get checked out. He said, no, he's fine. That was the end of it.

R.R. at 364a.

Armando A. Mendez, M.D. (Dr. Mendez), who performed an Independent Medical Examination (IME) of Claimant on June 23, 2019, testified, in relevant part:

Q. And based upon the records you reviewed, your examination findings, and history you took from [Claimant], did you have an opinion as to whether the [March 5, 2019] work incident resulted in any orthopedic injuries?

A. I did. And that opinion was that **I could not come up with any orthopedic diagnosis that I felt was reasonable and related to the incident of March 5th of 2019**.

Q. I just want to address the specific injuries that [C]laimant alleges and ask you to comment as to whether you believe the [March 5, 2019] work incident caused those injuries. **The first alleged injury is cervical**, **thoracic**, **and lumbar sprains and strains**. **Do you have an opinion on causation as to those injuries**?

6

A. I do have an opinion. **I do not see that there is any support for those diagnoses related to this incident**.

Q. Do you believe the [March 5, 2019] work incident resulted in **cervical radiculitis**?

A. **I do not**.

. . . .

Q. Do you believe the [March 5, 2019] work incident resulted in **lumbar radiculitis**?

A. **I do not**.

. . . .

Q. And do you believe the [March 5, 2019] work incident resulted in a left rotator cuff injury?

A. **I do not**.

. . . .

Q. Do you believe the [March 5, 2019] work incident resulted in any **injury** whatsoever **to the left lower extremity**?

A. **I do not**.

R.R. at 158a-160a (emphasis added).

Bryan De Souza, M.D. (Dr. De Souza), who performed an IME of Claimant on July 12, 2019, testified, in pertinent part:

Q. Okay. And, doctor, based upon your examination findings, your review of the available medical records and the history you obtained from [Claimant], did you develop any opinions as to a neurologic diagnosis as it pertains to the alleged March 5, 2019 date of injury?

A. Yes.

Q. And what is your opinion in that regard?

A. It's my opinion that [Claimant] reported that, on March 5[], [2019,] he had touched an electrical wire. However,

7

the -- his subjective symptoms, his reported symptoms of numbness and pain, did not follow any anatomical or physiological pattern to account for his symptoms. So, **there was no objective evidence neurologically of an injury**. I went on to check my other -- as I pointed out in the records, again, not only was there no evidence of an injury on the examination, but **the testing also didn't support that there was any evidence of an injury**. The -- and that the pattern that he was complaining about did not follow any medical reason of an anatomical or physiological nature. So, it was my opinion, based upon that [] -- that he -- that **I did not see any evidence of an injury related to what he said he did**, **picking up a wire**.

Q. In any of the medical records that you reviewed, was there any documentation of objective testing of any kind to corroborate an electrocution injury?

A. No.

R.R. at 223a-225a (emphasis added).

The WCJ determined:

Based on this [WCJ's] observation of Claimant's demeanor while testifying and hearing his testimony[,[5]] in addition to careful review and consideration of his deposition testimony, the fact witnesses['] testimonies and the medical evidence, **Claimant's testimony is rejected as not credible and persuasive**. On the same bases, the testimonies of Vargas and Orlando are found credible and persuasive and accepted as fact.

Of note is that **Claimant continued to work after the [March 5, 2019] incident, worked the following day and did not seek medical attention until [March 7, 2019]. None of the medical records document evidence of an entry or exit wound**, Claimant's [electrocardiogram] **was normal and he did not have**

---

[5] "[W]hen the issue involves the credibility of contradictory witnesses who have actually testified before the WCJ, it is appropriate for the [WCJ] to base his or her determination upon the demeanor of the witnesses." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052-53 (Pa. 2003).

8

**myoglobin in his urine.**[6] **At the [emergency room] on [March 7, 2019], Claimant reported tingling in his fingers and toes prior to the [March 5, 2019] incident and for which he was treating with his [primary care physician** (]PCP[)], [Lin-Fan Wang, M.D. (Dr. Wang),] but did not report the same to [Ronald Lieberman, D.O. (]Dr. Lieberman[)], Dr. Mendez or Dr. De Souza. **Claimant saw his PCP on [March 11, 2019,]** and **his next treatment was not until [April 3, 2019,] with a physician to whom he was referred by counsel. Claimant denied taking Gabapentin prior to the work injury when in fact**[,] **he was prescribed Gabapentin by his PCP Dr. Wang**[,] most likely for the injuries he sustained in a 2015 [motor vehicle accident (]MVA[)] from which he never fully recovered and as documented in Dr. Wang's records. Claimant's complaints regarding the [March 5, 2019] incident are similar to his 2015 MVA symptoms. [] Vargas and []Orlando['s] testimonies are supported by the exhibits to their depositions. [*See* R.R. at 394a (incident report)]. **Claimant's name is in the daily time sheets for [March 5, 2019] and [March 6, 2019,] in the column indicating a report of no injury.** [*See* R.R. at 392a-393a.] Notably, **Claimant's response to the question of whether [] Vargas was his supervisor is best described as an overreaction, detracting from his credibility.**[7]

---

[6] Dr. De Souza testified that "if [the electrical wire] caused an injury like [Claimant described], then it would have caused damage to the muscle, and in that case, there would be evidence of myoglobin in the urine." R.R. at 226a.

[7] When asked during his deposition if Vargas was his supervisor, Claimant responded: "Never heard of him. Don't even know of him. He don't [sic] exist. If he says [sic] he knows me, he don't [sic]. Maybe it was one of the Spanish guys. We didn't talk with them. The only person that we really talked to from their crew was Orlando." R.R. at 50a. However, at the WCJ hearing, when asked why he said he did not know Vargas, Claimant answered:

> I was brought to the awareness of who this Mexican guy was from my cousin who I got employed at this Union job from [] Orlando. I did not know [] Vargas, who he was, at that time.

> However, I got my cousin employed because [] Orlando asked me to get him ten workers that work like me. And I told him I can get him one and he said who. I told him my cousin, Carlos Hampton. And he brought him on board.

> . . . .

9

R.R. at 419a-420a (WCJ Dec. Finding of Fact (FOF) No. 13) (emphasis added).

The WCJ further concluded:

Based upon a review of the evidentiary record as a whole, the [WCJ] finds the testimonies of Drs. Mendez and De Souza more credible and persuasive than any contrary testimony of Dr. Lieberman. Accordingly, the testimony of Dr. Lieberman is rejected wherever inconsistent with the testimony of either Dr. Mendez or of Dr. De Souza and the testimonies of Drs. Mendez and De Souza are accepted as fact. Significant in reaching this determination are the following:

a) Drs. Mendez and De Souza['s] testimonies are consistent and supported by the examinations each performed and the records reviewed. Their medical analyses are clear, logical and well supported.

b) Dr. Lieberman's opinion that there was no sustained tetany/no sustained muscle contraction and therefore no myoglobin was based on Claimant reporting he gripped what he thought was a hose and let go[, which] is not consistent with Claimant's testimony of holding onto the hose for [five] or [six] seconds or his testimony that when he grabbed the wire, his muscles were contracting "and all of this was like cramped. And then, when I finally got off of it, when I finally could get off of this wire . . . [.]"

R.R. at 420a (WCJ Dec. FOF No. 14).

After reviewing the entire record, this Court cannot conclude that the WCJ's rejection of Claimant's testimony as not credible was "arbitrary and capricious, [or] so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *W. Penn Allegheny Health Sys., Inc.*, 251 A.3d at 475. Further, without his rejected testimony, Claimant could not

I found out from - who, exactly, he was from my cousin. He had dealt with [] Vargas. I did not know who he was. I didn't know his name. I didn't work around him or I didn't know who he was.

R.R. at 299a-300a.

10

meet his "burden of . . . establishing . . . [that] he . . . was injured while in the course of [his] employment." *Cruz*, 99 A.3d at 407.

Moreover, "in rendering a reasoned decision in a case with conflicting evidence, the WCJ 'must adequately explain the reasons for rejecting or discrediting competent evidence.'" *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003) (quoting Section 422(a) of the WC Act[8]). "[A] decision is 'reasoned' for purposes of Section 422(a) [of the WC Act] if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A reasoned decision is no more, and no less." *Id.* Here, because the WCJ adequately explained her reasons for rejecting Claimant's testimony, and finding Drs. Mendez and De Souza more credible and persuasive than any contrary testimony of Dr. Lieberman, her decision was reasoned. Accordingly, the WCJ's determination that Claimant did not suffer a work-related injury on March 5, 2019, was supported by substantial and competent medical evidence and was reasoned as a matter of law.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[8] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

11

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bobby Hampton,                                    :
                Petitioner          :
                         :
        v.                               :
                         :
A1 Environmental and Safety TR                    :
(Workers' Compensation Appeal                     :
Board),                                           :   No. 975 C.D. 2021
                Respondent        :

## O R D E R

AND NOW, this 24th day of April, 2023, the Workers' Compensation Appeal Board's August 4, 2021 order is affirmed.


_____
ANNE E. COVEY, Judge